OPINION
Defendant-appellant Gary Thomas Young appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of involuntary manslaughter, in violation of R.C.2903.04(A).
 STATEMENT OF THE FACTS AND CASE
On December 29, 1998, the Stark County Grand Jury indicted appellant on one count of aggravated murder, in violation of R. C. 2903.01. At his arraignment on January 8, 1999, appellant pled not guilty to the charge. Following the arraignment, defense counsel filed motions including a request for discovery which was filed January 12, 1999. That request was answered by the State on January 20, 1999, and several supplements were filed by the State prior to trial. A jury trial commenced on March 22, 1999. The following facts were elicited at trial: On the early morning of December 2, 1998, the charred, dead body of Randy Holman was found outside a Massillon, Ohio, tavern, known as the Three Star Tavern. Holman was found lying in the street on the south side of the bar. Holman had a bloody face and his clothing and body appeared to be burned. The coroner later pronounced Holman dead. Julia Mallchek testified that in the early morning hours of December 2, Michael Massey, Michael Flowers, Richard Smith, Roger Ridley and appellant came to her residence. Mallchek testified that the men discussed the fact that someone had been beaten and that the body had been set on fire. She also testified that either Flowers or Massey asked appellant "your wife is going to be like why is your hands so rough." Transcript of Proceedings [hereinafter Tran.] at 174. After learning from the newspaper about Holman's death, Mallchek contacted Detective Grizzard. Based upon what Mallchek told him, Grizzard interviewed Massey and Ridley about the homicide. Grizzard then flew to Kansas, where appellant was stationed in the Army, to speak with appellant about the homicide. While testimony showed that appellant initially denied that he was at the Three Star Tavern on December 2, 1998, later appellant admitted that he had been at the bar at closing time. Appellant also stated that he had been in a fight with an unknown black male. Detective Grizzard took photographs of appellant's hands and obtained a black leather jacket from appellant's closet. Appellant's leather jacket was sent to the Stark County Crime Lab for analysis. Evidence showed that the jacket contained numerous spots of human blood. Subsequent DNA testing indicated that Holman could not be excluded as a possible source of the DNA found in some of the blood stains on the leather jacket but the tests were not dispositive as to whose blood it was. Doctor P.S. Murthy of the Stark County Coroner's Office testified regarding the autopsy he performed on Holman. Dr. Murthy concluded that Holman died as a result of multiple blunt force trauma to the head which resulted in subarachnoid hemorrhaging. Ridley also testified for the State. Ridley testified that he was at the Three Star Tavern until closing time the morning of December 2, 1998. Ridley accompanied appellant, Massey, Flowers and Smith outside the bar. Ridley testified that while he was standing outside of the bar with these men, a pickup truck pulled up and a white man got out of the truck. The man, later identified as Holman, approached appellant and asked appellant if he had seen "Dexter". Ridley testified that appellant then punched the man in the face once or twice, knocking him out. Ridley indicated that the man "fell kind of hard". Ridley testified that he then left with appellant in appellant's vehicle. Flowers, Massey and Smith left together in a separate vehicle. Ridley testified that as the group left, he observed that Holman was on fire. Smith testified for the State as a result of a plea agreement. Smith stated that he had been standing outside the Three Star Tavern on December 2, 1998, after the bar closed. Smith testified that the victim, Holman, pulled up in a truck and approached the men asking for "Dexter". Smith testified that everyone but appellant told the man that Dexter was not there. Smith testified that appellant told the man, however, that Dexter was inside the bar. As the man approached the door to the bar, Smith testified that appellant punched the man in the face, knocking him out. Smith then observed appellant reach into the victim's pocket and pull out some cigarettes and change. According to Smith, appellant then drug the unconscious Holman into the street. Smith testified that appellant then proceeded to hit Holman two or three more times in the face. According to Smith, at that point, Massey proceeded to poor beer on Holman's face. Holman began to cough and Massey kicked the man two or three times. Smith testified that he himself then lit Holman's coat pocket on fire with a lighter. Latoshia Brinson, a friend of the appellant from the Army, also testified on behalf of the State. Brinson testified that she had talked to appellant shortly after he had returned to Kansas from Ohio in December of 1998. Brinson testified that appellant appeared to be upset and confided in her that while he was in Ohio, he had gone out with some people to a bar. According to Brinson, appellant said that while he and his friends were outside the bar, someone approached them about buying drugs. Appellant told Brinson that as the man approached, the man reached into his pocket and appellant thought he needed to protect himself in fear that the man was going for a weapon. Appellant then admitted to Brinson that he hit this white man twice in the face and that the man fell as a result. It was only after appellant hit the man, that he noticed that the item in the man's pocket was a set of car keys. Appellant further indicated to Brinson that appellant learned that the man had died by reading it in the newspaper. Brinson testified that appellant asked Brinson to pray for the appellant and for the man that had died. The defense presented two witnesses. First, Dr. Cox, a former Summit County Coroner, testified. Dr. Cox disputed Dr. Murthy's finding that Holman died from blunt force trauma to the head. Dr. Cox testified that the victim died as a result of cocaine and alcohol ingestion which lead to acute cardiac arrhythmia rather than from blunt force trauma to the head. Dr. Cox admitted on cross examination that the cardiac arrhythmia was not caused by the alcohol and cocaine in the decedent's system alone, but was triggered by the physical trauma that the victim endured as a result of being beaten. Appellant also presented the testimony of Tyler Trammell, a close friend of appellant. While Trammell was not on appellant's list of witnesses submitted in discovery, Trammell was permitted to testify in response to the State's use of Smith as a witness. Tran. at 497. Trammell testified that, after the incident, Smith admitted to him that Flowers and Massey, rather than appellant, were responsible for dragging the decedent into the street. Likewise, Trammell's testimony showed that Smith's version of the incident did not include appellant hitting the victim in the head while the victim was laying in the street. However, Trammell admitted on cross examination, that Smith confirmed that appellant started the chain of events by striking the victim in the face. Following submission of the case to the jury, appellant was found guilty of the lesser included offense of involuntary manslaughter in violation of R.C. 2903.04(A). Specifically, the jury found that appellant committed the offense of felonious assault and further found appellant guilty of the lesser included offense of involuntary manslaughter. The trial court sentenced appellant to ten years in prison. The sentence was journalized in an entry filed on March 31, 1999. It is from his conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 APPELLANT YOUNG WAS DENIED HIS RIGHT TO A FAIR TRIAL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AMENDMENTS VI, VIII AND XIV AND THE OHIO CONSTITUTION, WHEN THE TRIAL COURT PERMITTED THE STATE TO CALL A WITNESS THAT HAD NOT BEEN IDENTIFIED AS A WITNESS DURING DISCOVERY.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING JULIA MALLCHEK TO TESTIFY REGARDING CONVERSATIONS SHE OVERHEARD, SUCH EVIDENCE BEING HEARSAY IN VIOLATION OF THE OHIO CONSTITUTION AND THE VI, VIII, AND XIV AMENDMENTS TO THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR III
 APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE PROSECUTOR EXPRESSED HIS PERSONAL OPINION AS TO HIS GUILT AND DENIGRATED DEFENSE COUNSEL IN VIOLATION OF EC 7-24, THE OHIO CONSTITUTION AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 I
In appellant's first assignment of error, appellant contends that he was denied a fair trial when the trial court permitted the state to call a witness that had not been identified as a witness during discovery. We disagree. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Finnerty (1989),45 Ohio St.3d 104, 107. Absent an abuse of discretion, a ruling will not be disturbed upon appeal. An abuse of discretion connotes more than a mere error in law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. It implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Id. We must, therefore, determine if the trial court abused its discretion in allowing the co-defendant to testify when he had not been identified as a witness by the State in discovery, prior to the start of trial. Discovery is controlled by Crim.R. 16 which states, in pertinent part: (A) Demand for discovery Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided. . . .
 (B) Disclosure of evidence by the prosecuting attorney (1) Information subject to disclosure. (a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney: (I) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof; (ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer; . . . (e) Witness names and addresses; record. Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. . . . (D) Continuing duty to disclose If, subsequent to compliance with a request or order pursuant to this rule, and prior to or during trial, a party discovers additional matter which would have been subject to discovery or inspection under the original request or order, he shall promptly make such matter available for discovery or inspection, or notify the other party or his attorney or the court of the existence of the additional matter, in order to allow the court to modify its previous order, or to allow the other party to make an appropriate request for additional discovery or inspection.
 (E) Regulation of discovery . . . (3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R. 16. (Emphasis added) From the record before this court, we find that the State provided the defense with what evidence was available to the State prior to the start of the trial and in accordance with Crim.R. 16. Prior to the start of the trial, and therefore before the co-defendant had entered a plea bargain with the State, the State identified Smith as a co-defendant and provided the defense with the co-defendant's prior statement. The record reflects that the prosecutor filed a supplemental response to discovery and notified defense counsel in a timely manner that Smith would testify for the State once the plea bargain with Smith was reached. In addition, the State informed appellant's counsel that, when Smith testified, Smith would indicate that Massey had kicked Holman while Holman was on the ground. That testimony would contradict Smith's statement to police that no one had touched Holman except the appellant. We note that Crim.R. 16 anticipates that some changes will arise mid-trial and anticipates such a situation when it states that there is a continuing duty to disclose "prior to or during a trial" when a party discovers additional information which would have been subject to discovery under the original discovery request. Crim.R. 16(D). Therefore, we find that the State did not violate Crim.R. 16. Likewise, we do not find that the appellant was denied a fair trial under either the Ohio or United States Constitution when the trial court permitted the State to present Smith's testimony. We find this based on the following four reasons. First of all, appellant's counsel knew that Smith was a co-defendant. The fact that Smith had knowledge of the incident was known to appellant's counsel. Appellant's counsel also had been provided with Smith's statement to the police as part of the discovery process. After the plea bargain with Smith was reached, appellant's counsel was also informed of the nature of the plea bargain and of the fact that Smith would testify at trial that Massey had kicked Holman when Holman was on the ground. This testimony would contradict Smith's prior statement that only the appellant had touched Holman. Secondly, appellant's counsel was given an opportunity by the trial court for a continuance of the trial to give appellant's counsel an opportunity to interview Smith. In response to a question by the trial court as to how much time appellant's counsel needed to prepare for Smith's testimony, appellant's counsel said: "I can be ready tomorrow." T. at p. 448. In fact, Smith's testimony was presented the next day which is when appellant's counsel's said he would be ready. Thirdly, Smith's testimony was cumulative in nature as well as somewhat exculpatory to the appellant. Smith testified that appellant hit Holman twice, knocking Holman to the ground. T. at 469. Ridley, a witness to the incident, testified that appellant hit Holman once or twice on the chin, knocking appellant out. Ridley stated that, as a result, Holman fell "kinda hard." Tran. at 145. Brinson (a friend of the appellant) and Detective Grizzard testified that appellant admitted getting into a fight with a man on the night in question. Brinson testified that appellant told her that he hit Holman two times in the face, that Holman fell and that appellant subsequently learned that Holman had died. In addition, Smith indicated in his testimony that Smith himself had set Holman on fire and that Massey had kicked Holman two or three times after Holman was knocked to the ground. These statements were somewhat helpful to appellant's case and were contradictory to Smith's statement to the police in which Smith stated he saw no one touch Holman but appellant. Fourthly, the record reveals that appellant's counsel did a thorough job of attacking the credibility of Smith's testimony. While Smith did testify that appellant did strike Holman two or three more times after Holman was on the ground, this evidence was contradicted by the testimony of Tyler Trammell and Roger Ridley. Smith's testimony was attacked by defense counsel on cross-examination. This cross-examination revealed that Smith had initially lied to the police as to appellant's role in the incident, and that Smith, Massey and Flowers were in business together and had attempted to get their stories together so as to incriminate appellant. In addition, Smith's testimony revealed that he was testifying pursuant to a plea bargain and as a result of that plea bargain, Smith was facing ten months instead of ten years in prison. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues that the trial court committed prejudicial error in allowing witness Julia Mallchek to testify regarding conversations she overheard. We disagree. Shortly after the incident, Michael Massey, Michael Flowers, Rich Smith, Roger Ridley and the appellant arrived at the home of Julie Mallchek. Mallchek overheard the conversation of the five men. Mallchek testified that Michael Flowers said "That someone was beat up." T. at 171. Mallchek also testified that someone said there was a fire set and that Flowers said "[w]hy don't we drive back by and see if it's still burning?" T. at 174. Mallchek also testified that either Flowers or Massey said to the appellant that appellant's wife was "[g]oing to be like why is your hands so rough". T. at 174. Appellant contends that this testimony was inadmissible hearsay. The trial court admitted Mallchek's testimony under the spontaneous declaration exception to hearsay. We find that Flowers' statements that "[t]hat someone was beat up" and "[w]hy don't we drive back by and see if its still burning?", are not hearsay as they were not offered to prove the truth of the matters asserted. The fact that decedent had been beaten and set on fire was not disputed. The testimony was presented to show why Mallchek called the police which, in turn, prompted the police to develop appellant as a suspect. The third statement by Flowers or Massey addressed to appellant that appellant's wife was "[g]oing to be like why is your hands so rough," was offered to prove the truth of the matter asserted, i.e., that appellant's hands were rough. Appellant's rough hands would have been circumstantial evidence that appellant hit the decedent. However, the statement is not hearsay pursuant to Evid.R. 801(D)(2)(e). "A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Id. The men had just been involved in criminal acts together and were concerned with concealing their criminal conduct. We find, from the evidence presented, that the statement was a statement of co-conspirator, made during the course of and in furtherance of the conspiracy which was offered against appellant, a fellow co-conspirator. As such, the trial court did not error in admitting this statement. Furthermore, assuming arguendo that the statements were improperly admitted by the trial court, the appellant was not prejudiced by the testimony and any error was harmless. There was overwhelming evidence that the victim was killed by trauma to his head. Two witnesses testified that they saw appellant strike the victim at least two times in the area of the head or face. In addition, Brinson (a friend of appellant) testified that appellant admitted hitting a man two times on the night of the incident. Therefore, Mallchek's testimony was cumulative to the testimony presented by other witnesses and harmless beyond a reasonable doubt. Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant contends that the prosecutor committed prosecutorial misconduct when the prosecutor expressed his personal opinion as to appellant's guilt and denigrated defense counsel. We disagree. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1991),51 Ohio St.3d 160, 165, cert. den. 112 L.Ed.2d 596. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. In State v. Smith (1984), 14 Ohio St.3d 13, the Ohio Supreme Court set out the following test to determine whether prejudicial error results from a prosecutor's remarks in his closing arguments: The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. United States v. Dorr, supra, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger v. United States, supra, at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility. Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and ' . . . [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. . . . ' EC 7-37.
See, also, State v. Jacks (1989), 63 Ohio App.3d 200, 210.
In State v. Landrum (1990), 53 Ohio St.3d 107, the Ohio Supreme Court discussed the basic principles permitted in closing argument: (1) attorneys must be given latitude during closing argument; and (2) an attorney's remarks during closing argument must be viewed in the context of the entire argument. The court, at 112, emphasized: " . . . Not every intemperate remark by counsel can be a basis for reversal. State v. Maurer (1984), 15 Ohio St.3d 239 . . . . The touchstone of analysis ' . . . is the fairness of the trial, not the culpability of the prosecutor . . . .' Smith v. Phillips (1982), 455 U.S. 209, 219. The Constitution does not guarantee an `error free, perfect trial . . . .' United States v. Hasting (1983), 461 U.S. 499, 508. . . . "
If the prosecution's argument is found to be improper, we must also consider whether such conduct has prejudicially affected substantial rights of the defendant. See United States v. Hasting (1983), 461 U.S. 499, 508 as cited in Smith, supra, at 15. To find the improper argument harmless, "[i]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty." Id. However, when defense counsel fails to object to the comments of the prosecutor, those comments must be reviewed under the plain error doctrine. Plain error does not occur, unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Appellant contends that the following comment by the prosecutor violated the Ethical Canons contained in the Code of Professional Responsibility: "Sometimes — I don't know if any of you are fishermen. You know, you don't get much when you throw an empty hook out in the water. One thing you have to do when you fish is take a worm and put it on a hook. And that's a pretty disgusting thing to do.
Sometimes in criminal cases you have to do some things that you don't necessarily want to do. Richard Smith was the worm we put on a hook. Because I would rather get this guy, because I know and I submit to you the evidence shows, that he purposely caused Randy Holman's death.
But you don't have to rely on Richard Smith solely. You have to rely on Richard Smith in conjunction with the physical evidence. Physical evidence, ladies and gentlemen, supports everything that Richard Smith told you. . . ."
Transcript of Proceedings at 553-554.
We agree that it is improper for a lawyer to express his personal opinion as to guilt of an accused in closing argument. Code of Professional Responsibility, EC 7 — 24. While the prosecutor initially began to comment on his personal knowledge or belief, the prosecutor quickly altered his argument and directed the jury to consider the evidence before it. While we agree that this portion of the state's closing argument began with a potentially improper assertion of the prosecutor's personal knowledge, we find that the prosecutor effectively caught himself and corrected his argument. We note that defense counsel failed to object to the State's argument. Even if we were to find this argument to be error, we cannot say that this error, when taken in context of the entire comment and argument, was plain error. Secondly, appellant contends that the "prosecutor repeatedly disparaged defense counsel." Appellant argues that by these comments, the prosecutor consistently substituted emotions for reasoned advocacy. The prosecution made the following remarks: DEFENSE COUNSEL MR. JAKMIDES: Remember, ladies and gentlemen, they felt like they had to make that deal [with Smith] Wednesday morning. What does that tell you about their case? Thank you. THE COURT: Mr. Barr. CLOSING ARGUMENT — REBUTTAL MR. BARR: Oh, I didn't know he had that ability — MR. JAKMIDES: I object to that, Your Honor. It's totally improper. THE COURT: The jury will disregard that comment. MR. BARR: He stood here and told you what he was thinking and when he was doing. It's a wonderful ability. MR. JAKMIDES: Thank you. MR. BARR: Massey and Flowers thought this guy was an informant then why did he punch him twice first, if they thought he was an informant. They did it for that reason. They would have been the ones who started this, but we know that's not true. . . . Dr. Cox said that the beating triggered the cardiac arrhythmia. This man did the beating. He did the beating. He is responsible — of I guess what Mr. Jakmides is saying is it's open season on people who use coke. Just go beat them up. It's okay if they die because they have cocaine in their system. It's okay. MR. JAKMIDES: I object. THE COURT: I will — MR. JAKMIDES: I didn't say that. THE COURT: Yes. I will sustain that. The jury will disregard that comment. MR. BARR: I guess, we should just go out and start on the people who have terminal cancer. They are going to die anyway. That is not what the law says. You take the victim the way you find him. You are responsible. You caused the death. That's the law. I don't make it. That's the law. It's your obligation to follow it. And I am not asking you to rely solely on the testimony of Richard Smith. No, I am not."
Tran. at 549-550; 553-554.
As to the Prosecutor's comment that "Oh, I didn't know he had that ability," we fail to understand the meaning of the comment. Defense counsel objected to this ambiguous comment, the objection was sustained and the jury was instructed to disregard the comment. We find that even if it was error, we fail to see how it was prejudicial. As far as the prosecutor's comments that defense counsel argued "it's open season on people who use coke. Just go beat them up . . .," defense counsel's objection was sustained. The trial court ordered the jury to disregard the comment. While the comment may have been improper, we find that, in the context of the entire closing argument and the overwhelming evidence against appellant and in light of the trial court's admonition to the jury to disregard the comment, appellant was not prejudiced. Lastly, we consider the prosecutor's comments that "we should just go out and start on the people who have terminal cancer. They are going to die anyway." While this argument may have been improper, we need not make such a determination. Even if this comment was error, we find that appellant was not prejudiced. The evidence was overwhelming that appellant struck Holman and that, as a proximate cause, Holman died. We find that these comments did not prejudice appellant. In each instance, as well as cumulatively, we find that even if these comments had not been made by the prosecutor, the jury would have found appellant guilty. Appellant's third assignment of error is overruled.
 __________________________ Edwards, J.
By Gwin, P.J. and Hoffman, J. concurs