The STATE of Ohio, Appellee,

v.

JACKS, Appellant.

[Cite as *State v. Jacks* (1989), 63 Ohio App.3d 200.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55415.

Decided June 12, 1989.

Krupansky, P.J., concurred separately with opinion.

Motion to certify record overruled, 45 Ohio St.3d 718, 545 N.E.2d 902.

*John T. Corrigan,* Prosecuting Attorney, *John Riotta* and *Bruce A. Zaccagnini,* Assistant Prosecuting Attorneys, for appellee.

*Paul Mancino, Jr.,* for appellant.

---

ANN MCMANAMON, Chief Justice.

John Jacks timely appeals his conviction for the murder (R.C. 2903.02) of Carl May. Jacks raises eleven assignments of error.[1] Because we find the prosecutor committed reversible error during his cross-examination of Jacks and his closing arguments, and the court improperly instructed the jury, we reverse and remand for a new trial.

It is undisputed that on the evening of October 12, 1987, Jacks, May, Phillip Knox and Sam Hodge gathered on a vacant lot on Cleveland's east side. During the evening the men consumed beer and wine while warming themselves around a barrel containing a fire. Hodge eventually left the lot. According to Knox, May appeared "high," "drunk" and was "slumped" over a nearby wall. Knox described May's speech as "rambling" and "mumbled." Knox testified that the defendant and May "exchanged words" and May said "something to the effect about sticking something up his butt." Knox averred Jacks then picked up a tire jack from the ground and struck May in the head or neck. May fell to the ground, hitting his leg on the barrel. Knox testified that the defendant told May that if he "tried to pick something up he [the defendant] was going to mess him up." According to Knox, May stood up and walked away from the lot. The defendant dropped the tire jack to the ground and also left the lot.

Knox testified that, at school the following day, Jacks asked Knox if he had seen May. Knox averred the defendant stated that he had "been high and lost his temper." Knox contacted the police only after learning they wished to speak with him about May's death. On cross-examination Knox admitted prior convictions for theft and drug offenses.

Cuyahoga County Deputy Coroner Dr. Robert Challener performed an autopsy of May which disclosed multiple head abrasions, discoloring behind the left ear and bruises on May's trunk, thighs and buttocks. Challener testified that removal of May's scalp revealed a depressed fracture of the left side of the skull and a large hematoma in the epidural space. Challener

---

1. See Appendix.

opined that the injuries were caused by a blunt impact to the left side of the head. According to Challener, the nature of the death was homicidal and it was unlikely that the injuries resulted from a fall. Challener further opined that it would have been possible for May to walk after the impact until the clot became large enough to cause a coma. The coroner stated the other abrasions were consistent with a fall.

Cleveland police officer Frank Shaffer testified that, on October 12, 1987, May was taken to a hospital emergency room after he was discovered prone in the hallway of a three-family house on East 125 Street and Benham Avenue. Shaffer learned that Sam Hodge resided in the house, which was a five-minute walk from the vacant lot. Shaffer later interviewed Knox, who implicated the defendant in May's death. A week later police found a tire jack lodged in a tree on the same lot described by Knox.

Jacks admitted drinking with Knox and May on the evening of October 12. Jacks explained that he and May discussed the technical school they attended and that May and Knox talked about an unsatisfactory cocaine sale May made to a friend of Knox. According to the defendant, he left May and Knox to buy some more wine and, when he returned, May was leaving the lot. Jacks described May as "drunk" and "wobbly." Jacks testified he left the lot after he and Knox finished the wine. The defendant denied speaking to Knox about Carl May the following day.

In his first and second assignments of error, Jacks challenges the court's jury instructions. Specifically, he disputes the court's definition of "cause."

R.C. 2903.02 defines "murder" and provides that "[n]o person shall purposely cause the death of another." In defining "cause" the court stated:

"Now, cause is an essential element of the offense charged. The State charges that the act of the defendant caused the death.

"Cause is an act, which in the natural and continuous sequence directly produces the death and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act.

"A death is the result of an act when it is produced directly by the act in the natural and continuous sequence and would not have occurred without the act. Result occurs when the death is naturally and foreseeably caused by the act [*sic*].

"The causal responsibility of the defendant for an unlawful act is not limited to its immediate or most obvious result. He is responsible for the natural, logical and foreseeable result that follows in the ordinary course of events from an unlawful event.

"The test for foreseeability is not whether the defendant should have foreseen the injury in its precise form or to a specific person. The test is whether a reasonably prudent person, in like and similar circumstances would have anticipated that death what [*sic*] likely to result to anyone from the performance of the unlawful act."

The defendant argues that the court's instruction permitted the jury to find him guilty on the basis of negligence instead of purposeful behavior as required by R.C. 2903.02. We agree.

The first three paragraphs are verbatim the instructions delineated in 4 Ohio Jury Instructions (1981) 68–69, Section 409.55, and are referenced in the murder instruction, Section 503.02. We find these three paragraphs accurately reflect the law on murder. The court, however, erred in charging the jury on the final two paragraphs. These instructions, although addressed to the issue of causation, undercut the *mens rea* requirement for murder. The erroneous instructions, see 4 Ohio Jury Instructions (1981) 69–70, Section 409.56, are not recommended in charging a jury on murder nor should they be used in such a charge. The trial court did instruct the jury on the purposeful requirement; nonetheless, we cannot say beyond a reasonable doubt that the erroneous instruction did not lead the jury to find the defendant guilty of murder based upon a lesser *mens rea*. We further note that the prosecutor improperly referred to this erroneous instruction in closing arguments.

Accordingly, the defendant's first and second assignments of error are sustained.

In his third assignment Jacks asserts the trial court erred by not instructing the jury on the elements of negligent homicide (R.C. 2903.05).

The trial court would be required to instruct on negligent homicide only if the offense was a lesser included offense of murder and then only if the evidence supported such a charge. See *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311; *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. This court repeatedly has held that negligent homicide is never a lesser included offense of murder. See *State v. Koss* (Aug. 18, 1988), Cuyahoga App. No. 54213, unreported, at 8–10, 1988 WL 88341, reversed on other grounds (1990), 49 Ohio St.3d 213, 551 N.E.2d 970; *State v. Johnson* (May 12, 1988), Cuyahoga App. No. 53732, unreported, at 5–10, 1988 WL 47413; *State v. Kelly* (June 27, 1985), Cuyahoga App. No. 49298, unreported, at 7–9, 1985 WL 6896. See, also, *State v. Jenkins* (1983), 13 Ohio App.3d 122, 13 OBR 141, 468 N.E.2d 387; *State v. Eubank* (1987), 38 Ohio App.3d 141, 528 N.E.2d 1294. Contra *State v. Banks* (1986), 31 Ohio App.3d 57, 31 OBR 97, 508 N.E.2d 986.

Accordingly, this assignment of error fails.

In his fourth assignment of error Jacks contends the trial court improperly charged the jury on the use of a deadly weapon.

The trial court charged the jury:

"If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon."

Jacks argues this instruction permitted the jury to make an inference upon an inference.

It is well established that a jury may not base an inference solely upon an inference. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph one of the syllabus. When the jury, however, "bases its verdict partly on a reasonable inference drawn from facts in evidence, and partly on an inference drawn both from those same facts and from common human experience, the verdict is not the result of the impermissible stacking of an inference upon an inference." *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 28 OBR 13, 502 N.E.2d 204, syllabus.

In the instant case the jury heard direct evidence that the defendant hit the victim in the head/neck area with a tire jack with such force as to cause the victim to fall to the ground. From this direct evidence the jury could conclude the weapon was used as a deadly weapon. Based upon this same eyewitness testimony the jury separately could infer the defendant's purpose was to cause the death of May. We do not find this to be an impermissible stacking of inferences. See *Hamilton Twp. Trustees, supra.* Further, we note the jury was not charged that the use of a deadly weapon gave rise to a conclusive presumption as prohibited in *Sandstrom v. Montana* (1979), 442 U.S. 510, 523, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39, 50.

Accordingly, this assignment of error is not well taken.

In his fifth assignment the defendant asserts the court erroneously admitted autopsy photographs.

The admission of photographs is left to the sound discretion of the trial court. *State v. Hill* (1967), 12 Ohio St.2d 88, 41 O.O. 369, 232 N.E.2d 394, paragraph two of the syllabus. In determining the admissibility of photos under Evid.R. 403, the issue is whether the probative value of the photographic evidence substantially outweighs the danger of unfair prejudice to the defendant. *State v. Tingler* (1972), 31 Ohio St.2d 100, 60 O.O. 81, 285 N.E.2d 710. Finally, " * * * the mere fact that a photograph is gruesome or

horrendous is not sufficient to render it *per se* inadmissible." *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791, citing *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 35 O.O.2d 8, 14, 215 N.E.2d 568, 577.

■ Jacks challenges the admission of three photographs depicting the victim's skull after the autopsy. These photos illustrate the coroner's testimony concerning the formation and size of the hematoma which resulted in May's death. One of the pictures also depicts the fracture of the victim's skull. These photographs are gruesome. They were, however, not merely cumulative but did serve to corroborate the coroner's testimony. Thus, we find no abuse of discretion in their admission.

Accordingly, this assignment of error is not well taken.

■ Jack's sixth assignment of error challenges the admission of the tire jack (Exhibit 8). The defendant claims the state failed to prove positively that the exhibit was the weapon allegedly used in the crime.

Knox testified:

"Q. Showing you what's been marked as State's Exhibit Number 8, take a look at that, Mr. Knox. Can you identify that, sir?

"A. Looks like what he hit him with.

"Q. Now, drawing your attention to when Mr. Jacks hit Mr. May with this—is this the object? Does it appear to be?

"A. Yes."

On cross-examination Knox admitted there were several such instruments in the vacant lot and he could not be certain that Exhibit 8 was the weapon allegedly used by Jacks. Police officer Ferris told the jury that he found Exhibit 8, eight days after the crime, in a tree in the lot, after receiving information to look in the tree.

■ The admission or exclusion of evidence rests within the sound discretion of the trial court. Cf. *Hill, supra.* We reject the defendant's assertion that the weapon had to be positively identified as the murder weapon before its admission. See *State v. Watkins* (Mar. 29, 1984), Franklin App. No. 83AP–903, unreported, at 4, 1984 WL 4693; *State v. Price* (Aug. 10, 1983), Greene App. No. 82–CA–92, unreported, at 3; *State v. Reddrick* (June 22, 1987), Montgomery App. No. CA 9710, unreported, at 7, 1987 WL 14536; *In re Watson* (June 22, 1988), Hamilton App. No. C–860726, unreported, at 6–7, 1988 WL 65588. The issue is one of what weight the jury may place on the evidence and not of its admissibility. *Watkins, supra; Watson, supra.*

Based upon the evidence, the jury reasonably could conclude that Exhibit 8 was employed to kill May.

This assignment of error fails.

In his seventh assignment Jacks asserts the coroner improperly testified that May's death was a homicide.

It is well established that a coroner testifies as an expert witness to assist the jury in determining the cause of death. *Vargo v. Travelers Ins. Co.* (1987), 34 Ohio St.3d 27, 30, 516 N.E.2d 226, 229; Evid.R. 702. In *Vargo*, the Supreme Court noted that the coroner's duties required "a finding upon evidence as to whether * * * a person * * * came to his death by unlawful or suspicious means * * *." *Vargo, supra,* at 30, 516 N.E.2d at 229. See, also, R.C. 313.19. Further, the coroner's conclusion "as to the cause of death and the manner and mode in which the death occurred is entitled to much weight." *State v. Manago* (1974), 38 Ohio St.2d 223, 227, 67 O.O.2d 291, 293, 313 N.E.2d 10, 13.

In this case the coroner testified that May died from an epidural hematoma and that it was unlikely his injury was the result of a fall. The coroner opined the death was a homicide. We find no error in this testimony. Cf. *Manago, op. cit.; State v. Heinish* (Sept. 8, 1988), Cuyahoga App. No. 54427, unreported, at 13, reversed in part on other grounds (1990), 50 Ohio St.3d 231, 237, 553 N.E.2d 1026, 1030; *State v. Grant* (Dec. 4, 1987), Lake App. No. 11–252, unreported, 1987 WL 26720. The defense was free to offer evidence to rebut the coroner's testimony, see *Vargo*, 34 Ohio St.3d at 31, 516 N.E.2d at 230, but failed to do so.

Accordingly, this assignment of error is overruled.

In his eighth assignment the defendant contends the court erroneously denied a mistrial following an outburst by the victim's mother.

During the defendant's testimony, the victim's mother stated, "You're lying, you can't be lying like that." The trial court reprimanded the mother and ordered her to leave the courtroom.

In *State v. Morales* (1987), 32 Ohio St.3d 252, 513 N.E.2d 267, the Supreme Court discussed the test for determining if an emotional outburst during a murder trial by a spectator related to the victim requires reversal. The court stated:

"Whether an emotional demonstration in the courtroom during the course of a murder trial by a spectator related to the victim improperly influences the jury against the accused[,] * * * constitute[s] misconduct so as to deprive the accused of a fair trial * * * [is a question] of fact to be resolved by the trial court, whose determination thereon will not be disturbed on review in the

absence of evidence contrary to that determination clearly and affirmatively appearing on the face of the record." *Id.* at 255, 513 N.E.2d at 271, quoting *State v. Bradley* (1965), 3 Ohio St.2d 38, 32 O.O. 21, 209 N.E.2d 215, syllabus.

The court further stated that only the trial judge can "authoritatively determine whether the jury was disturbed, alarmed, shocked or moved by the demonstration." *Id.*

In the instant case there is no clear, affirmative evidence that the outburst deprived the defendant of a fair trial. As we previously noted, the court chastised the mother and ordered her from the courtroom.

Accordingly, this assignment of error fails.

In his ninth and tenth assignments the defendant claims the prosecutor committed reversible error.

Initially Jacks complains about prosecution queries concerning whether he received welfare and his employment status. The trial court overruled defense objections to this testimony and the defendant admitted that two years previously he had received welfare for one year. Generally, an accused's socio-economic status is irrelevant. *State v. Page* (Aug. 18, 1988), Cuyahoga App. No. 54252, unreported, at 5, 1988 WL 88347. See, also, DR 7–106(C)(1) and (2) of the Code of Professional Responsibility; NDAA, National Prosecution Standards, Trial Decorum 17.1(D)(4) through (6). This line of questioning was improper and the court should have sustained the objection. The prosecutor also improperly asked Jacks whether he had heard of the Commandment, "Thou Shalt not Kill." The trial court sustained the defendant's objection.

The defendant also cites the following comments by the prosecutor during closing arguments:

"There is nothing in his argument that makes any sense at all, not a thing about that argument makes any sense. Philip Knox was never a suspect in our case.

"MR. MANCINO: Objection.

" * * *

"That's something that they [defense counsel] contrived because somehow during the testimony about prior records, 1970, some eighteen years ago, he [Knox] had indicated he had an unlawful drug abuse case. What are they trying to do to you, ladies and gentlemen? Are they trying to search for the truth or are they trying to deceive you?

"MR. MANCINO: Objection.

"THE COURT: Overruled.

"* * * *

"Now, if you don't believe Philip Knox, then you don't have to go any further. You can sign a not guilty verdict and let him go. It's a [sic] simple a [sic] that, but Philip Knox is telling you the truth.

"MR. MANCINO: Objection.

"THE COURT: Overruled.

"The law uses the standard of a reasonably prudent person. In law school they taught us about the reasonably prudent person. It's an imaginary person that we use to base our actions on what—

"MR. MANCINO: Objection to this, your Honor.

"THE COURT: Overruled.

"MR. RICOTTA: Now, it's not what this man thought when he struck him across the head—

"MR. MANCINO: Objection.

"MR. RICOTTA: You determine whether it's reasonable to conclude that when you take an object 36 inches long, and the weight that this is, and you will have it in the jury room and you take it with both hands and you strike it again someone's head, is it foreseeable that the natural and logical consequence is that it will cause the death of another.

"* * * Anyone of us that would do that type of act should be made to pay for the consequences of their act.

"MR. MANCINO: Objection.

"THE COURT: Overruled."

■■■ A court, in determining if a prosecutor's remarks constitute prejudicial error, must decide whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. We recognize that the prosecutor is afforded wide latitude in closing arguments. *State v. Woodards* (1966), 6 Ohio St.2d 14, 26, 35 O.O.2d 8, 14, 215 N.E.2d 568, 578, certiorari denied (1966), 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212.

■■■ We find that for the most part the prosecutor's comments in this case fell outside the proper scope of closing arguments. It is well established that a prosecutor must not give his personal opinion on whether a witness testified truthfully. *State v. Brand* (1978), 56 Ohio App.2d 271, 10 O.O.2d 281, 382 N.E.2d 1171. See, also, DR 7–106(C)(4) of the Code of Professional Responsibility. The prosecutor blatantly opined that Knox, the sole eyewitness, was telling the truth about the defendant's role in May's death. This improper

comment was amplified by the statement that Knox was never a suspect in the case. Further, the comments charging defense counsel with deceit were unwarranted. *Smith, supra.* Finally, the prosecutor improperly referred to the reasonable person standard. As we discussed in the first and second assignments, the court's instructions were erroneous in this regard.

Reviewing the entire record we cannot say that beyond a reasonable doubt the jury would have found the defendant guilty in the absence of the improper remarks and cross-examination of the defendant. See *Woodards, supra,* 6 Ohio St.2d at 15, 35 O.O.2d at 8, 215 N.E.2d at 571. The state's case hinged upon the credibility of Knox versus the defendant's credibility. The improper remarks went to the heart of this contest between the two witnesses. Cf. *State v. Nichols* (May 5, 1988), Cuyahoga App. No. 53729, unreported, at 13–14, 1988 WL 43298. Thus, we are compelled to remand the case for retrial.

Accordingly, the defendant's ninth and tenth assignments of error are sustained.

In his eleventh assignment of error Jacks challenges the sufficiency of the evidence.

A reviewing court will not reverse on insufficiency of the evidence if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Further, it is within the purview of the trier of fact to assess witness credibility. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The elements of murder were set forth in our discussion of the first assignment.

If the trial had been conducted free of reversible error we would find the evidence sufficient to affirm the conviction. Phillip Knox identified the defendant as May's assailant. Further, the coroner's testimony was consistent with the manner of death described by Knox. Based upon this evidence a jury reasonably could conclude that the state proved each material element of murder.

Accordingly, this assignment of error is overruled.

The judgment is reversed and the cause is remanded for a new trial.

*Judgment accordingly.*

JOHN F. CORRIGAN, J., concurs.

KRUPANSKY, J., concurs separately.

KRUPANSKY, Presiding Judge, concurring.

I concur in the final decision and the outcome of the case. I would, however, reverse and remand only because the prosecutor committed prosecutorial misconduct in closing argument by suggesting defendant and defense counsel contrived the defense by expressing his opinion as to the credibility of the state's witness Knox and of defendant.

Appendix

I

"The defendant was denied due process of law when the court improper [sic] defined and expanded upon the definition of cause and causation in this case."

II

"The defendant was denied due process of law when the court proceeded to constructively amend the statute by expanding upon the definition of cause and causation."

III

"The defendant was denied due process of law when the court refused to instruct the jury upon the lesser included offense of negligent homicide."

IV

"The defendant was denied a fair trial by reason of an instruction by the court which allowed the jury to make an inference on an inference."

V

"The defendant was denied a fair trial when the court admitted into evidence photographs of the decedent taken after therapy [sic] by the coroner's office which were both gruesome, repulsive and repetitive."

VI

"The court committed prejudicial error and denied the defendant a fair trial when it admitted Exhibit 8 into the evidence."

VII

"The defendant was denied due process of law when the court permitted the coroner to testify as to the mode and manner of death."

## VIII

"The defendant was denied a fair trial by reason of the outburst by the motion [*sic*, mother] of the decedent during the course of the trial [when she] called the defendant a liar."

## IX

"The defendant was denied a fair trial when he was improperly cross-examined in a demeaning and humiliating manner by the prosecuting attorney."

## X

"The defendant was denied a fair trial and due process of law by reason of the improper argument by the prosecuting attorney in closing arguments."

## XI

"The defendant was denied due process of law when the court overruled a motion for judgment of acquittal."