JOURNAL ENTRY and OPINION
Defendant-appellant, Jeffrey C. Keith, (hereinafter Keith) appeals the judgment of the trial court wherein the jury returned a verdict of guilty on five of the nine counts before them. For the following reasons, Keith's appeal is not well taken.
Keith, an attorney at all relevant times, was indicted for his involvement with Christine Dezso and her family. Keith had dated Ms. Deszo on and off for over 13 years. Throughout their relationship, Keith never lived with nor became engaged or married to Ms. Deszo. Keith never adopted any of her three children. He also dated five other women during this time period. Ms. Deszo did sign a power of attorney to Keith in 1990 when she suffered a heart attack and triple by-pass surgery.
Almost a year after the relationship had ended, Ms. Deszo's son, Joe Deszo, was electrocuted while swimming by a dock at Put-in-Bay during the summer of 1993. Keith immediately took control of the legalities of the situation including representing the estate in a wrongful death suit and applying for the death proceeds on two separate life insurance policies.
The beneficiaries never received the checks from the life insurance companies. Keith took both checks and forged the beneficiaries' names without their permission. Keith then deposited the proceeds in his bank account. Keith claimed the monies were deposited in his account to finance the expenses of the wrongful death suit. During this time, Keith also disclosed to the Deszo family that he had discovered Joe Deszo's Will in his safety deposit box which happened to name Keith as a one-half beneficiary of the estate.
Dr. Phillip Bouffard, a renowned handwriting expert, testified that the signatures on the back of the insurance checks belonged to Keith. The expert also opined that the Will in question had been typed on Keith's typewriter and that Joe Deszo's signature on the document was a forgery. Further, one of Keith's girlfriends testified that within days of Joe Deszo's death, Keith was talking about making it big and disclosed his plan to back-date a fake Will.
Keith raises six assignments of error from the trial proceedings.
The first and fifth assignments of error have common issues of law and fact and shall be considered jointly. The first assignment of error states:
 I. THE TRIAL COURT ERRED IN LIMITING THE DEFENDANT'S CASE IN CHIEF REGARDING FINANCIAL AFFAIRS AMONG THE PARTIES.
The fifth assignment of error states:
 V. THE TRIAL COURT ERRED IN FAILING TO GIVE EFFECT TO ITS INITIAL GRANT OF JUDICIAL NOTICE.
These assignments of error basically involve the trial court's decisions to limit or exclude evidence. The standard for such is well defined in Ohio. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Jacks (1989), 63 Ohio App.3d 200, 207. Therefore, an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. State v. Finnerty (1989), 45 Ohio St.3d 104, 107. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court. See, generally, State v. Jenkins (1984), 15 Ohio St.3d 164.Finnerty, supra, at 107-108.
In the first assignment of error, Keith complains that he was prevented from eliciting testimony about the agency-like relationship that existed between him and the Dezsos. Keith argues that this testimony would have lead to further acquittals. This argument taken to its logical conclusion means that the beneficiaries of the insurance proceeds would have condoned the forgery had they known Keith intended to forge their names. The law in Ohio on subsequent ratification of offenses is quite clear. In State v. Huggins (Jan. 25, 1989), Washington County App. No. 87 CA 11, unreported, the court held that a person may be convicted of forgery even where the person whose name was forged ratified the act. The court reasoned that ratification may relieve civil liabilities to others on the instrument, but it cannot affect the rights of the state. Id. at 3. Under the facts herein, the crimes were committed and complete when Keith uttered or possessed with purpose to utter, the checks which he knew were forged. Once the crime was committed, it was beyond the power of any private person to bar prosecution or conviction for the crime. Id. at 2.
Keith also alleges the trial court erred by initially granting judicial notice relative to the probate agreement and subsequently disallowing any reference to Probate or Court of Appeals proceedings by granting the state's motion in limine. The same rationale holds true for this alleged error as it did for the previous argument. Any evidence of ratification, via probate agreement or otherwise, is irrelevant to a criminal prosecution.Huggins, supra, at 2-3.
Accordingly, any testimony or probate documents regarding a long-standing ratification agreement with the complaining witnesses to act on their behalf was irrelevant to forgery and uttering charges. These assignments of error are without merit.
The second assignment of error states:
 II. THE TRIAL COURT ERRED IN NOT SETTING ASIDE UNSUPPORTED VERDICTS.
Under this assignment of error Keith argues that since there was insufficient proofs of facts for a jury to convict on forgery, the related offense of uttering should have been converted to an acquittal. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland
(1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions inTibbs v. Florida (1982), 457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
In the instant case, there was sufficient circumstantial and direct evidence for the jury to convict on uttering charges, regardless of their finding on the forgery counts. Under R.C.2913.31(A)(3)no person, with the purpose to defraud, shall utter any writing that the person knows to have been forged. There is no statutory requirement that the person making use of the forged document (uttering) must also be found to be the forger of said document.
Factually, there was direct testimony from Keith's girlfriend that Keith told her he planned to strike it rich relating to Joe Deszo's tragic death. Keith admitted to his girlfriend that he manufactured a fraudulent Will and actually showed her the document. There was testimony from a handwriting expert that the signatures were forged by Keith and that his typewriter was used to type the Will. Circumstantially, Keith would not have been entitled to any of the wrongful death proceeds without being named as a beneficiary in Joe Deszo's Will. Reviewing this type of evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of uttering proven beyond a reasonable doubt. There was sufficient evidence that Keith knew or should have known he was presenting a forged Will.
The third assignment of error states:
 III. THE TRIAL COURT ERRED IN FAILING TO GIVE SUFFICIENT JURY INSTRUCTIONS.
While somewhat convoluted in his brief, it seems that Keith is arguing that the jury instructions were insufficient in that they failed to instruct on consent, mistake of fact, and character evidence. Ohio law is clear that it is within the sound discretion of the trial court to determine whether sufficient evidence was presented to require a jury instruction. State v. Wolons (1984),44 Ohio St.3d 64. Once again, a reviewing court will not substitute its judgment for that of the trial court absent an abuse of discretion. Jenkins, supra.
As to the lack of a mistake of fact and consent jury instruction, the record is quite clear that no such evidence was presented at trial to justify a jury instruction on these defenses. In fact, the opposite is true. The testimony from two different beneficiaries testified that Keith did not have permission to forge their name on the insurance checks or use the funds to finance litigation. Keith makes no references to the record to support his argument. As enunciated earlier, ratification is not a defense to forgery. Huggins, supra. Since evidence of ratification is irrelevant to any of the elements of the crimes Keith was charged, it was totally proper for the trial court not to instruct the jury on the defenses of consent and mistake of fact.
Lastly, Keith complains that the trial court should have given an instruction about character evidence not being admissible to show propensity to commit an offense. A review of the record clearly shows that Keith himself opened the door regarding his relationship with a witness/former girlfriend. The state even objected to Keith's testimony at trial to save this witness from himself. A defendant cannot claim error as to the fruits of his own inquiry. State v. Sierra (July 30, 1981), Cuyahoga App. Nos. 42829, 42829, 42951, unreported. Accordingly, this assignment of error is without merit.
The fourth assignment of error states:
 IV. THE TRIAL COURT ERRED IN NOT DECLARING A MISTRIAL AFTER PREJUDICIAL COMMENTS IN CLOSING ARGUMENT.
The standard in Ohio for a prosecutor's conduct to constitute reversible error is that it must deprive the defendant of a fair trial. State v. Apanovitch (1993), 33 Ohio St.3d 19, 24. Specifically concerning comments made during closing argument, a prosecutor is afforded wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom. State v. Jenks (1991), 61 Ohio St.3d 259; State v.Stephens (1970), 24 Ohio St.2d 76, 82.
The only closing argument comments Keith complains of in his brief are that the prosecutor alluded to him being incarcerated, that he lengthened the trial with numerous witnesses, and that his representation of the wrongful death lawsuit was less than zealous. Once again the record is abundantly clear that Keith himself elicited testimony from witnesses relative to his incarceration and actually waived his constitutional right when questioned by the court whether he wanted to continue with that line of questioning. The comments regarding the number of witnesses and Keith's lawyering skills in the civil case were proper under Jenks, supra,
and require no further analysis.
The sixth assignment of error states:
 VI. THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL.
This assignment of error, like the others, is without merit because the record is quite clear that Keith himself facilitated most of the delays. Keith requested several trial continuances over the state's objections and filed numerous pre-trial motions. In addition, a psychiatric evaluation was conducted to determine if Keith was competent to stand trial.
The time limit in which to bring a felony charge to trial is 270 days after the accused's arrest. R.C.2945.71(C)(2). This time limit can only be extended by specifically defined statutory exceptions. R.C.2945.72 spells out these exceptions as follows:
 The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;
 (B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
 (C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 (D) Any period of delay occasioned by the neglect or improper act of the accused;
 (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 (F) Any period of delay necessitated by a removal or change of venue pursuant to law;
 (G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
 (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
 (I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.
A review of the trial court's docket in this case reveals that several of the provisions extending the time in which an accused must be brought to trial were utilized by the parties. The psychiatric evaluation and Keith's numerous pre-trial motions tolled the statutory time period proscribed for a speedy trial in R.C. 2945.71(C)(2).
All assignments of error having been considered and ruled upon, the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________ MICHAEL J. CORRIGAN, JUDGE
 TERRENCE O'DONNELL, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.