OPINION
{¶ 1} Appellant, Christopher J. Magnusson, appeals the judgment of the Lake County Court of Common Pleas entered after trial by jury convicting him of felonious assault, a felony of the second degree. For the reasons herein, we affirm.
 {¶ 2} The charges in this case arose from a fight that took place at a party appellant attended on Friday, April 14, 2006. The party was thrown by one Eric Jordan, in honor of his friend James Chandler, who was scheduled to depart for the Marine *Page 2 
Corps the following Sunday. Throughout most of the evening, the atmosphere of the party was peaceful with all attendees enjoying themselves. Notwithstanding the mirthful mood, two young men, appellant and one Joe Anderson, remained removed from the general festivities.
 {¶ 3} Testimony indicated that Anderson is a physically imposing and violent individual who prided himself on his ability to fight. Appellant further buttressed this assessment when he characterized Anderson as a "nut" who thought himself a "bad ass." Witness Matthew Slodic testified Anderson was particularly well-known for his tendency to place his opponents in a "sleeper hold," an efficient choke hold designed to render an individual quickly unconscious. Slodic stated he had observed Anderson apply this technique on three or four occasions.
 {¶ 4} Appellant and Chandler were well-known adversaries. Evidence indicated that the young men had been involved in several scrums in the past and had ongoing personal problems with one another. Anderson, on the other hand, was only casually acquainted with Chandler and the two men had no ostensible personal problems.
 {¶ 5} Witnesses testified appellant and Anderson spent most of the evening together. Slodic testified the young men distanced themselves from others, as though they were "plotting in the corner." Slodic stated he overheard appellant exclaim that "someone was going to go in the sleeper hold tonight." Slodic also testified he heard appellant advising Anderson "we should do this." Witness Alexander Ochaba testified he heard appellant say "let's do this" more than one time to Anderson prior to the incident. *Page 3 
 {¶ 6} As the night wore on, the partygoers began to leave. Mr. Chandler was about to depart when he was attacked from behind by Anderson. Witnesses testified Anderson placed Chandler in a sleeper hold. Immediately after Chandler was put in the hold, appellant punched him in the stomach or chest twice. After being rendered unconscious, Anderson proceeded to repeatedly kick Chandler in the head. The two men surreptitiously fled the scene amidst the chaos of a shocked crowd of onlookers. Chandler remained on the ground with a broken and bloodied face. Testimony indicated Chandler's wallet was taken during, or immediately after, the beating.
 {¶ 7} After regaining consciousness, Chandler was transported to a local hospital by some friends. He was eventually life-flighted to MetroHealth Hospital in Cleveland where he underwent reconstructive surgery to the left side of his face. In all, six titanium plates were inserted in Chandler's face. The surgery was followed by several months of recovery.
 {¶ 8} On June 9, 2006, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of aggravated robbery, in violation of R.C.2911.01(A)(3), a felony of the first degree. Appellant pleaded not guilty to both charges.
 {¶ 9} The case went to trial on October 26, 2006 and appellant was found guilty of felonious assault by way of a complicity instruction pursuant to R.C. 2923.03(A)(2) and acquitted of aggravated robbery. Appellant was sentenced to a term of six years imprisonment and ordered to pay $39,748.95 in restitution for Chandler's economic loss. *Page 4 
 {¶ 10} Appellant now appeals and asserts five assignments of error for our consideration. Appellant's first assignment of error reads:
 {¶ 11} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A)."
 {¶ 12} Crim.R. 29 states, in pertinent part:
 {¶ 13} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 14} When reviewing whether the evidence is sufficient to support a criminal conviction, an appellate court examines the evidence and determines whether it, if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 273. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 273. Circumstantial evidence and direct evidence inherently possess the same probative value, even when used to prove essential elements of an offense. Id. at 272.
 {¶ 15} Appellant argues the state failed to put forth sufficient evidence to prove beyond a reasonable doubt that he caused Mr. Chandler serious physical harm. Because appellant's physical participation in the fight was limited to a "few punches" to Mr. Chandler's chest or stomach, appellant maintains his actions fall short of meeting *Page 5 
the definition of "serious physical harm." Therefore, appellant concludes, his conviction rests on insufficient evidence. We disagree.
 {¶ 16} If appellant was charged as the principle offender, his argument would have merit. After all, the evidence adduced at trial demonstrates appellant's direct physical participation was limited to one or two body punches; such contact, while enough to sustain a misdemeanor assault charge, would not, under these facts, support a finding of "serious physical harm" as defined under R.C. 2901.01. However, appellant's argument must fail because his conviction for felonious assault was a result of his complicity to aid and abet in the commission of the principal offense in violation of R.C. 2923.03(A)(2). With this in mind, we shall consider whether the state put forth adequate evidence to sustain appellant's conviction.
 {¶ 17} R.C 2903.11, provides in pertinent part:
 {¶ 18} "(A) No person shall knowingly do either of the following: "(1) Cause serious physical harm to another or to another's unborn;"
 {¶ 19} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B).
 {¶ 20} Further, R.C. 2923.03 states, in relevant part:
 {¶ 21} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 22} "* * *
 {¶ 23} "(2) Aid or abet another in committing the offense;" *Page 6 
 {¶ 24} "Aiding and abetting is defined as assisting or facilitating `the commission of a crime, or to promote its accomplishment.'"State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 31, quoting State v. Johnson, 93 Ohio St.3d 240, 243, 2001-Ohio-1336. A defendant found guilty of complicity in the commission of an offense is prosecuted and punished "as if he were a principle offender." R.C.2923.03(F).
 {¶ 25} The evidence showed that, as Chandler was leaving, Joe Anderson approached him from behind and placed him in a "sleeper hold." While Chandler was being held by Anderson, appellant delivered several blows to Chandler's midsection. After Chandler fell unconscious, Anderson proceeded to administer a vicious beating by way of multiple kicks to the head.
 {¶ 26} Various witnesses testified that Joe Anderson is an extremely hostile individual who enjoys fighting. According to Matthew Slodic, who met Anderson at an anger management session, Anderson had a penchant for placing the subjects of his aggression in sleeper holds. Slodic testified he had observed Anderson apply this method of choke on three or four other individuals in the past. Even appellant pointed out that Anderson is a "nut" and fancies himself a "bad ass." According to his own testimony appellant was aware of Anderson's truculence.
 {¶ 27} In light of this awareness, appellant testified he told Anderson he had "a lot of trouble" with Chandler in the past. Although appellant denied attempting to incite Anderson, Alexander Ochaba testified he heard appellant say "let's do this" to Anderson several times before the incident. Slodic also overheard appellant advising Anderson "we should do this" before the attack and, earlier in the evening, heard appellant comment that "someone was going to go in the sleeper hold tonight." *Page 7 
 {¶ 28} Appellant also noted he punched the victim in the midsection due to his belief that Anderson was holding him for this purpose. That is, he believed, in light of his disclosure that he and Chandler had problems, that Anderson grabbed Chandler for the purpose of allowing appellant to beat him. This admission, in conjunction with Ochaba's and Slobic's testimony regarding appellant's statements on the night in question, provide sufficient circumstantial evidence that appellant was aware that his comments to Anderson would "probably cause a certain result," viz., Anderson being seriously injured.
 {¶ 29} The state put forth sufficient evidence for reasonable minds to conclude beyond a reasonable doubt that Chandler suffered serious physical harm at the hands of Anderson. Furthermore, there was sufficient evidence for the jury to conclude that appellant knew his actions would facilitate or promote the commission of the felonious assault on Chandler.
 {¶ 30} Appellant's first assignment of error lacks merit.
 {¶ 31} Appellant's second assignment of error asserts:
 {¶ 32} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 33} When reviewing a challenge to a criminal conviction based upon the weight of the evidence, an appellate court reviews:
 {¶ 34} "`the entire record, weights the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Page 8 State v. Newton (June 27, 1997), 11th Dist. No. 96-L-058, 1997 Ohio App. LEXIS 2802, *14, citing, State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 35} Under his second assignment of error, appellant first asserts his conviction is against the weight of the evidence because the state failed to demonstrate he physically caused Chandler's "serious physical harm." We disagree.
 {¶ 36} As discussed supra, one convicted of complicity "shall be
prosecuted and punished as if he were the principal offender." R.C.2923.03(F). (Emphasis added.) The state charged appellant with felonious assault. Statutorily, a charge of complicity may be stated in terms of the principal offense. Id. Accordingly, appellant was properly convicted of felonious assault if there was sufficient evidence that he knowingly aided or abetted Anderson to cause serious physical harm to Chandler as defined under R.C. 2003.11(A)(1). Because we have previously concluded the state met its burden, this aspect of appellant's argument lacks merit.
 {¶ 37} Next, appellant contends the state failed to offer credible evidence that appellant was an accomplice to the felonious assault under R.C. 2923.03(A)(2). Specifically, appellant maintains that any evidence showing appellant supported, assisted, encouraged, cooperated with, advised, or incited Anderson in the commission of the underlying crime was tenuous and inadequate to meet the state's heightened burden. Again, we disagree.
 {¶ 38} The evidence demonstrated that Anderson was minimally acquainted with Chandler, at best, and Anderson had no known dispute with Chandler. However, all witnesses, including appellant, testified that they were aware of the past problems appellant had with Chandler. Moreover, while talking with Anderson at the party, *Page 9 
appellant testified he identified Chandler as an individual with whom he had problems in the past. Matthew Slodic testified he observed appellant and Anderson cavorting together away from other party-goers. Slodic asserted it appeared the young men were "plotting in the corner" throughout the evening. Slodic also overheard appellant assert that he and Anderson "should do this" and assert that "someone was going to go in the sleeper hold tonight." Additionally, shortly before the attack, Alexander Ochaba observed appellant and Anderson talking in the driveway and heard the former state to the latter, "[L]et's go do this, Let's do this."
 {¶ 39} Although appellant testified he did not urge or provoke Anderson to act in the manner he did, it is well settled that a jury is free to believe all, part, or none of the testimony of each witness appearing before it. State v. Heilman, 11th Dist. Nos. 2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, at ¶ 43, citing State v Darroch (Dec. 10, 1993), 11th Dist. No. 92-L-104, 1993 Ohio App. LEXIS 5933, *19. Accordingly, the jury was free to believe the assessments of the state's witness and disregard appellant's self-serving testimony regarding the issue of incitement. See, e.g., State v. McLean, 11th Dist. Nos. 2003-T-0117 and 2003-T-0018, 2005-Ohio-1562, at ¶ 24. Because there was ample circumstantial evidence showing appellant knowingly assisted, facilitated, or incited Anderson to commit the underlying offense of felonious assault, we hold the jury did not lose its way or create a manifest miscarriage of justice in finding appellant guilty of felonious assault.
 {¶ 40} Appellant's second assignment of error lacks merit.
 {¶ 41} Appellant's third assignment of error provides: *Page 10 
 {¶ 42} "The causation and natural consequences jury instructions given by the trial court undercut the mens rea requirement for the charges and thus violated defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."
 {¶ 43} Under his third assignment of error, appellant contends the trial court's jury instruction relating to the "knowingly" element impermissibly reduced the state's burden in violation of his due process rights.
 {¶ 44} The trial court issued the following instructions relating to the necessary mens rea for the underlying charge:
 {¶ 45} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. * * * A person has knowledge of circumstances when he is aware that such circumstance or circumstances probably exist."
 {¶ 46} The trial court then elaborated on the nature of legal causation:
 {¶ 47} "Now the charge goes on to read at that time the defendant did knowingly cause serious physical harm. Cause is defined as the act or failure to act of the defendant caused physical harm to a person. Cause is an essential element of the offense. Cause is an act or failure to act which in the natural and continuous sequence directly produces serious physical harm and without which it would not have occurred. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural, logical and *Page 11 
foreseeable consequences and/or the results that follow, in the ordinary course of events, from the act.
 {¶ 48} "The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable results that follow in the ordinary course of events, from the act or failure to act.
 {¶ 49} "There may be more than one cause or causes of an event. However, if a defendant's act or failure to act was one cause, then the existence of the other causes or cause is not a defense. The defendant is responsible for the natural consequences of the defendant's unlawful act, even though the serious physical harm was also caused by the intervening act or failure to act of another person and/or agency."
 {¶ 50} Appellant contends the foregoing instructions define causation in terms of a civil negligence standard and are thus inapposite in a criminal trial. Specifically, appellant seems to argue that because the instructions direct the jury to consider a legal concept of foreseeability, the culpable mental state of knowingly was impermissibly watered down to negligence. We disagree.
 {¶ 51} We first point out that the culpable mental state for felonious assault and/or complicity to felonious assault is "knowingly." The legal concept of "knowingly" incorporates the scienter requirement that one ought to know one's actions will "probably cause certain results." The concept of reasonable probability literally embraces the concept of foreseeability. Rather than reduce the state's burden, the instructions ostensibly provide clarity into the meaning and import of "probabilities," i.e., *Page 12 
a term necessarily built into the definition of the mens rea requirement for the underlying crime. In this respect, appellant's argument is unpersuasive.
 {¶ 52} Furthermore, appellant recognizes and concedes this court has previously addressed and overruled this specific argument in State v.Crain, 11th Dist. No. 2001-L-147, 2003-Ohio-1204. In Crain, the appellant asserted the jury instructions used by the trial court, which were substantively identical to those at issue in the instant matter, "impermissibly changed the mens rea requirement of * * * knowingly for felonious assault to a civil negligence standard." Id at ¶ 16. The appellant in Crain, like the instant appellant, relied upon the United States Supreme Court's decision in Sandstrom v. Montana (1979),442 U.S. 510 and the Eighth Appellate District's decision in State v. Jacks
(1989), 63 Ohio App.3d 200.
 {¶ 53} In Sandstrom, the defendant was on trial for intentional homicide. After the parties rested, the trial judge instructed the jury regarding the culpable mental state of "knowingly." In so doing, the judge stated that the "law presumes that a person intends the ordinary consequences of his voluntary acts." Id. at 513. In reversing the defendant's conviction, the United States Supreme Court held that a juror could give the presumption conclusive or burden-shifting effect in violation of the Constitution. Id. at 521.
 {¶ 54} In Jacks, the Eighth District reversed the defendant's murder conviction due to the trial court's instructions relating to the meaning of the legal concept of "foreseeability," i.e., "the test is whether a reasonably prudent person, in like or similar circumstances would have anticipated that death [would] likely result to anyone from the *Page 13 
performance of the unlawful act."[1] The court held that, even though the court instructed the jury on the proper definition of "purposefully," it could not say "beyond a reasonable doubt that the erroneous instruction did not lead the jury to find the defendant guilty of murder based upon a lesser mens rea." Id. at 205.[2]
 {¶ 55} In Crain, this court analyzed and distinguished bothSandstrom and Jacks. Id. at ¶ 34-39. In particular, this court determined that because the instructions on causation did not contain references to "presumptions, intent, or a reasonably prudent person[,]" they did not impermissibly reduce the state's burden. Id. at ¶ 40. This court's holding in Crain represents binding precedent on the issue at bar. The justification behind this court's holding in Crain remains persuasive and thus we decline appellant's invitation to overturn its pronouncement. For the reasons discussed in Crain, and, because the concept of foreseeability is necessarily built into the legal definition of "knowingly" we hold the trial court's instructions did not lower the culpable mental state for felonious assault to a civil negligence standard.
 {¶ 56} Appellant's third assignment of error is not well taken.
 {¶ 57} Appellant's fourth assignment of error states: *Page 14 
 {¶ 58} "The trial court erred by sentencing the defendant-appellant to the more-than-the-minimum term of imprisonment."
 {¶ 59} Under this assignment of error, appellant argues that the trial court erred in failing to properly consider relevant factors pursuant to R.C. 2929.12(C) and (E), i.e., factors mitigating the seriousness of appellant's act and factors which would indicate appellant would be less likely to recidivate. Specifically, with respect to mitigation, appellant contends the trial court failed to give appropriate consideration to appellant's protestations that he "did not cause or expect to cause physical harm to the victim" pursuant to R.C.2929.12(C)(3); further, appellant alleges the trial court failed to specifically consider that appellant's physical participation in the assault provide "substantial grounds to mitigate" his conduct pursuant to R.C. 2929.12(C)(4).
 {¶ 60} With regard to the recidivism "less likely" factors, appellant alleges the trial court erred by failing to recognize the "offense was committed under circumstances not likely to recur" under R.C.2929.12(E)(4). Moreover, appellant contends the trial court gave insufficient weight to the genuine remorse he expressed throughout the proceedings. See R.C. 2929.12(E)(5).
 {¶ 61} Finally, appellant points out that the trial court relied upon a misconstruction of the facts when it imposed its sentence. At the sentencing hearing, the trial court stated appellant "went to a party with this goon." Appellant properly points out he did not "go with" Anderson, but merely met Anderson at the party and remained in Anderson's company throughout the evening.
 {¶ 62} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio characterized R.C. 2929.12 as providing general guidance for a trial court in *Page 15 
sentencing. Id. at ¶ 36. The trial court is not mandated to engage in any specific recitation of its considerations; it is merely required to "consider" the factors. Id. at ¶ 42; see, also, State v. Arnett,88 Ohio St.3d 208, 215, 2000-Ohio-302. Although a sentencing court must consider the "seriousness" and "recidivism" factors under R.C. 2929.12, it nevertheless possesses the discretion to impose any sentence within the statutory range. State v. Sanders, 11th Dist. No. 2006-L-222,2007-Ohio-3207, at ¶ 18.
 {¶ 63} Here, prior to imposing a six year term of imprisonment, the trial court stated in its judgment entry on sentence that it:
 {¶ 64} "considered the record, oral statements, any victim impact statement, pre-sentence report and/or drug and alcohol evaluation submitted by the Lake County Adult Probation Department of the Court of Common Pleas, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12."
 {¶ 65} The court indicated it had considered the relevant factors under R.C. 2929.12 and, in so doing, imposed a prison term within the statutory range for a felony of the second degree. As such, appellant's sentence is not contrary to law. Appellant complains the trial court did not weigh various factors under R.C. 2929.12(C) and (E). The trial court's judgment entry suggests otherwise. Although appellant may believe certain specific factors under R.C. 2929.12(C) and (E) deserved greater consideration, the trial judge is vested with the discretion to determine how much weight such factors should receive. As the trial judge properly considered the R.C. 2929.12 factors, we hold the court's ultimate sentence was neither arbitrary nor unreasonable given the evidence *Page 16 
adduced at trial. Thus, the trial court did not abuse its discretion in sentencing appellant to six years in prison.
 {¶ 66} Furthermore, while the trial court mischaracterized the fact that appellant "went to the party with [Anderson,]" we believe this error inconsequential. The evidence demonstrated that appellant and Anderson were at the party, they were together throughout the evening, they were somewhat removed from the other partygoers, and appellant's remarks provoked Anderson to attack Chandler. In light of this evidence, any error in the trial court's factual statement is harmless as a matter of law.
 {¶ 67} Appellant's fourth assignment of error lacks merit.
 {¶ 68} Appellant's final assignment of error asserts:
 {¶ 69} "The trial court erred to the prejudice of the defendant-appellant when it ordered him to pay $39,748.95 in restitution for the victim's medical bills."
 {¶ 70} Appellant contends that a review of the record, including the presentence report and psychological report, indicate it is unlikely he will ever be able to pay such a large amount of restitution. We disagree.
 {¶ 71} A court imposing a sentence upon a felony offender may order the offender to make restitution "to the victim of the [his or her] crime * * * in an amount based on the victim's economic loss." R.C.2929.18(A)(1).
 {¶ 72} R.C. 2929.01(M) defines "economic loss" as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *."
 {¶ 73} However, "[b]efore imposing a financial sanction under section2929.18 of the Revised Code[,] * * * the court shall consider the offender's present and future ability *Page 17 
to pay the amount of the sanction or fine." R.C. 2929.18 does not require a court to hold a hearing on the issue of a defendant's ability to pay; rather, a court is merely required to consider the offender's present and future ability to pay. State v. Martin, 140 Ohio App.3d 326,338, 2000-Ohio-1942; see, also, State v. Smith, 4th Dist. No. 06CA2893,2007-Ohio-1884, at ¶ 41.
 {¶ 74} "`Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted.'" State v. Agnes (Oct. 6, 2000), 11th Dist. No. 99-L-104, 2000 Ohio App. LEXIS 4653, *23-*24, quoting State v. Williams (1986), 34 Ohio App.3d. 33, 34. A trial court properly considers an offender's present and future ability to pay when it indicates it has done so in its judgment entry. State v. Sanders, 11th Dist. No. 2003-L-144,2004-Ohio-5937, at ¶ 10. In reviewing a restitution order, an appellate court examines "whether there was competent, credible evidence to support the trial court's order of restitution." State v. Morgan, 11th Dist. No. 2005-L-135, 2006-Ohio-4166, at ¶ 21.
 {¶ 75} Here, in its judgment entry of sentence, the trial court concluded:
 {¶ 76} "[H]aving determined that the defendant is able to pay a financial sanction of restitution or is likely in the future to be able to pay a financial sanction of restitution, [the court] hereby orders that the defendant is to make restitution to the victim of the defendant's criminal act, for any out of pocket expenses incurred by the victim, James R. Chandler, or his family, for his medical bills that total Thirty-Nine Thousand seven Hundred Forty-Eight Dollars and Ninety-Five Cents ($39,748.95), the victim's economic loss." *Page 18 
 {¶ 77} The record supports the amount of restitution, which was specifically disclosed in the presentence investigation (PSI) report. However, appellant takes issue with the court's determination that appellant "is able to pay * * * or is likely in the future to be able to pay a financial sanction * * *" in the amount of $39,748.95. We shall therefore address whether the court's conclusion is supported by competent, credible evidence.
 {¶ 78} At the time of his incarceration, appellant was 19 years old and in good physical health. He will be 25 years old upon his release. Appellant's PSI indicates he has been regularly employed, working between 35 and 40 hours per week, since June of 2002 (since he was approximately 15 years old). While the PSI indicates appellant left school in the eleventh grade, he reported that he is in the process of obtaining his high school diploma and asserted he would like to enroll in culinary school in the future. Moreover, appellant's psychological report indicates that he should be able to "turn his life around" if he remains sober and changes the individuals with whom he associates. In relation to this, appellant stated at the sentencing hearing:
 {¶ 79} "Since this incident I realized I needed to make serious lifestyle adjustments and better decisions. I have started to do many things. I got a job and was employed at Longhorn Steak House. I always surrounded myself with a positive group of people and have been attending church, AA and NA meetings regularly. I had become a productive citizen in society."
 {¶ 80} After considering the foregoing, particularly appellant's young age at the time of release, his past work record, his ambitions, both occupationally and educationally, and his express intention to make "serious lifestyle adjustments," we *Page 19 
believe there is competent, credible evidence in the record to support the trial court's conclusion that appellant will likely be able to pay the financial sanction at issue.
 {¶ 81} Appellant's final assignment of error lacks merit.
 {¶ 82} For the reasons discussed above, appellant's five assignments of error are overruled and the judgment entries on conviction and sentence are hereby affirmed.
DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur.
[1] It is worth pointing out that the court in Jacks determined that the same instruction pertaining to the definition of causation used by the trial court in the instant matter was proper.
[2] C.f. State v. Burchfield (1993), 66 Ohio St.3d 261, wherein the Supreme Court of Ohio upheld the appellant's conviction for murder with a firearm specification although the trial court had given a similar instruction; to wit, "[t]he test for foreseeability is not whether the defendant should have foreseen the injury in its precise form or as to a specific person. The test is whether a reasonably prudent person in the light of all the circumstances would have anticipated that death or injury or physical harm was likely to result to anyone from the performance of the unlawful act or failure to act." Id. at 261-263. In affirming the conviction, the Court observed that extensive instructions regarding "purpose" were given prior to the causation instruction and, immediately following the causation instruction, the trial court reiterated the purpose requirement for murder. Id. at 262. The Court criticized the trial court for using the foreseeability instruction in a murder case; however, it did not hold the instruction invariably constituted reversible error. Id. at 263. *Page 1