{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Archie Wilder, guilty and sentenced him to a term of imprisonment. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} The following facts are relevant to this appeal. On June 15, 2001, a Lucas County grand jury returned an indictment against appellant, Archie Wilder. Appellant was charged with one count of aggravated murder, a violation of R.C. 2903.01(A), accompanied by a gun specification, R.C. 2941.145 and a repeat violent offender specification, R.C. 2941.149, for the shooting death of the same individual. In the alternative, appellant was charged with one count of murder, accompanied by a gun specification. Appellant entered not guilty pleas.
 {¶ 3} The case proceeded to trial on August 6, 2001. On August 8, 2001, the jury returned guilty verdicts on the aggravated murder charge and the gun specification. On August 29, 2001, the trial court sentenced appellant to a life term in prison with parole eligibility after a full 20 years in prison on the aggravated murder charge. The trial court imposed a sentence of three years of actual incarceration on the firearm specification, to be served consecutively to the sentence on the aggravated murder charge. The trial court also imposed a sentence of ten years beyond the basic prison term on the repeat violent offender specification. Appellant filed a timely notice of appeal.
 {¶ 4} Appellant sets forth the following three assignments of error:
 {¶ 5} "Assignment of Error No. 1: The Conviction Was Not Supported By The Manifest Weight Of The Evidence.
 {¶ 6} "Assignment of Error No. 2: The Trial Court Violated Mr. Wilder's Rights To A Fair Trial And Due Process When It Permitted The State To Argue, And When It Charged The Jury, That Mr. Wilder Was Guilty As A Complicitor.
 {¶ 7} "Assignment of Error No. 3: The Prosecutor Committed Misconduct During Rebuttal Closing Argument, Thereby Denying Mr. Wilder His Rights To A Fair Trial And Due Process."
 {¶ 8} In his first assignment of error, appellant argues that his conviction was not supported by the manifest weight of the evidence. This court finds no merit in this assignment of error.
 {¶ 9} In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio stated:
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 11} In State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, the Ohio Supreme Court stated that "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 {¶ 12} "*** In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. (Citation omitted.)" Id. at 386.
 {¶ 13} In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 {¶ 14} "*** Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387.
 {¶ 15} The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. The Court then cited State v. Martin (1983), 20 Ohio App.3d 172, 175, and quoted the following:
 {¶ 16} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 17} Following the above law, this court has examined the evidence at trial. The police investigation had identified appellant and an accomplice, Nicholas Conner ("JR"), as suspects in the murder. Ultimately, both appellant and JR were charged with murder. JR admitted that he had made a plea bargain with the state for his testimony.
 {¶ 18} JR testified that both he and appellant had been involved in an argument/fight with the victim and his friends on the night of the murder. JR testified that after the argument/fight, appellant placed a cellular phone call and stated that he was going home to get his gun. After getting his gun, appellant and JR drank and talked about the fight. They took a car belonging to JR's sister and drove around looking for the victim and his friend; JR testified that appellant did not want to drive his vehicle because it was recognizable. After they spotted the vehicle the victim had been driving, appellant told JR to stop; appellant got out of the car with his gun and told JR to turn the car around. JR testified that he heard several shots and that when appellant got back into the car, he stated that he thought he had murdered the victim. JR testified that appellant told him to have JR's wife lie and state that JR had been with her on the night of the murder.
 {¶ 19} JR further testified that both he and appellant dealt in drugs. JR also testified that months earlier appellant was supposed to be paid money and drugs for killing the victim because the victim has stolen drugs from someone else. JR testified that appellant had offered him a half of kilo of "dope" if JR helped him.
 {¶ 20} The state produced evidence of appellant's cellular phone calls and the locations from which these cellular phone calls were initiated and to what number. The locations from which the cellular phone calls were initiated corresponded with JR's testimony regarding appellant's movement during the evening in question. Although bullets and shell casings were recovered, no gun was ever found. No fingerprints were recovered from the bullets or shell casings.
 {¶ 21} Another witness, the mother of appellant's child, testified that appellant told her the police would ask her about times on the night of the murder. She testified that he told her he had called her at 3:30 a.m. and that he had arrived in Tiffin at around 5:00 a.m. Although she testified that she initially told police that appellant had called her at 3:30 a.m. and arrived in Tiffin at around 5:00 a.m., she testified that the phone call was actually at 4:25 a.m. and that appellant arrived in Tiffin approximately 6:00 a.m.
 {¶ 22} After thoroughly reviewing the entire record, we conclude that any rational trier of fact could have found that the essential elements of aggravated murder were proven beyond a reasonable doubt. Furthermore, after thoroughly reviewing the entire record, weighing the evidence and all reasonable inferences, this court cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice.
 {¶ 23} Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 24} In his second assignment of error, appellant argues that the trial court violated his rights to a fair trial and due process when it permitted the state to argue, and when it charged the jury, that he was guilty as a COMPLICITOR. This court finds no merit in this assignment of error.
 {¶ 25} The extent of appellant's argument in this assignment of error is the statement that he believes the law as expressed in State v.Herring (2002), 94 Ohio St.3d 246, 251, "to be wrong." The law appellant refers to is:
 {¶ 26} "R.C. 2923.03(F) states: `A charge of complicity may be stated in terms of this section, or in terms of the principal offense.' Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated *** in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. See State v. Keenan (1998),81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946, citing Hill v. Perini
(C.A.6, 1986), 788 F.2d 406, 407-408."
 {¶ 27} The above quote correctly sets forth the law in Ohio. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 28} In his third assignment of error, appellant argues that the prosecutor committed misconduct during rebuttal closing argument, thereby denying him his rights to a fair trial and due process. This court finds no merit in this assignment of error.
 {¶ 29} Appellant argues that the prosecutor committed misconduct during his rebuttal closing argument four times.[1] Appellant argues that the prosecutor twice declared his belief in appellant's guilt and twice declared his belief in JR's truthfulness. Only the first one of these instances was objected to by appellant's trial counsel.[2]
 {¶ 30} The test regarding prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165; State v. Smith (1984), 14 Ohio St.3d 13, 14. In making this determination, an appellate court should consider the following factors: (1) the nature of the remarks; (2) whether an objection was made by trial counsel; (3) whether the court gave corrective instructions; and (4) the strength of the evidence against the defendant. State v. Braxton (1995), 102 Ohio App.3d 28, 41. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly-tried case. State v. Keenan (1993),66 Ohio St.3d 402, 410. Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266. "The touchstone of analysis '*** is the fairness of the trial, not the culpability of the prosecutor ***.'(Citations omitted.)" State v.Underwood (1991), 73 Ohio App.3d 834, 840-41. Furthermore, a prosecutor is afforded wide latitude in closing arguments. State v. Jacks (1989),63 Ohio App.3d 200, 210. The Ohio Supreme Court has also stated that "Realism compels us to recognize that criminal trials cannot be squeezed dry of all feeling." State v. Keenan (1993), 66 Ohio St.3d 402, 409.
 {¶ 31} In regard to the prosecutor's closing argument, in Pang v.Minch (1990), 53 Ohio St.3d 186, 194-95, the Ohio Supreme Court stated:
 {¶ 32} "*** It is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury. (Citations omitted.) Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. (Citations omitted.) The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. (Citations omitted.) Such determination will not be reversed on appeal absent an abuse of discretion. (Citation omitted.)
 {¶ 33} "***
 {¶ 34} "*** Moreover, the jury was instructed that the opening and closing statements of counsel are not evidence and should not be considered as such. ***
 {¶ 35} "A presumption always exists that the jury has followed the instructions given to it by the trial court. (Citations omitted.) ***"
 {¶ 36} This court has applied this test set forth in State v.Smith, supra, 14 Ohio St.3d at 14, to the claimed improper comments and find that when the closing argument is viewed in its entirety, Maurer, supra, the prosecutor was fair, did not improperly appeal to the jury's emotion, and did not create prejudicial error. Therefore, this court finds appellant's argument in regard to the prosecutor's closing argument to be without merit.
 {¶ 37} Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 38} On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
JUDGMENT AFFIRMED.
Knepper and Pietrykowski, JJ., concur.
[1] The following are the four specific statements appellant argues are prosecutorial misconduct:
 Statement Number 1. "Another thing that the evidence showed you is that when you look at this guy you're looking at a person who is guilty of aggravated murder." (Trial transcript, p. 829) This statement was objected to by appellant's trial counsel.
 Statement Number 2. "I fail to see any gap as in the State's case. And I believe that after you take a look at the evidence and you have gone through it all that you too will see that this guy right here, Archie Wilder, was the one that pulled the trigger seven times." (Trial transcript, p. 837)
 Statement Number 3. "The evidence will show you that honesty is easy. And what I mean by that is I'm talking about Nick Conner on the stand. He went through a direct examination from myself and he put the facts out there for you." (Trial transcript, p. 830)
 Statement Number 4. "And what I want to say along those lines is is (sic) that [Detective Riddle's] personal opinion and his evidence had gotten the State to the point where it was when the State talked to Nick Conner. We knew everything that Mr. Conner told us. Mr. Conner did not know what we knew. His interview merely confirmed what we knew and, that, ladies and gentlemen, is one way you can tell if a person is truthful." (Trial transcript, p. 835)
[2] Because appellant did not object to three of the alleged instances of prosecutorial misconduct, this court reviews this assignment of error for plain error, Crim.R. 52(B). "[N]otice of plain error *** is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111.