OPINION
{¶ 1} Appellant, Everett Crain, appeals from the July 13, 2001 judgment entry of the Lake County Court of Common Pleas.
 {¶ 2} On August 25, 2000, the Lake County grand jury returned a two-count indictment of appellant. Count one was for attempted murder, a felony of the first degree and a violation of R.C. 2923.02. Count two was for felonious assault, a felony of the second degree and a violation of R.C. 2903.11(A)(2). The indictment arose from events occurring on June 18, 2000.
 {¶ 3} At the trial, the victim, Reaver Jones, testified that, prior to June 18, 2000, she had known appellant for approximately ten months. For a portion of that period of time, she had been living with appellant in his trailer home in Madison Township. However, during the two weeks immediately prior to June 18, the victim had been living at Forbes House, a domestic violence shelter.
 {¶ 4} The victim testified that she had been "drinking and drugging" on June 17, so she could not return to Forbes House on June 18. Therefore, she went to appellant's home. When she arrived at appellant's residence, appellant and his ex-wife were inside. Approximately ten minutes later, appellant's ex-wife departed. The victim testified that when she first arrived at appellant's trailer, the situation between herself and appellant was calm. However, when he noticed that she had changed her hairstyle, he accused her of cheating on him and slapped her twice and punched her in the eye. According to the victim, appellant continued to beat her from approximately noon until 5:00 p.m., and he repeatedly told her that he was going to kill her.
 {¶ 5} At approximately 5:00 p.m., both the victim and appellant were in the bedroom. Appellant left the bedroom to retrieve a cane that contained a concealed blade, approximately eighteen inches in length. When appellant returned to the bedroom with the cane, he and the victim struggled over the weapon. She fell, but gained control of the weapon. However, she put the weapon down. Appellant eventually seized the blade, pushed the victim back on the bed, and stabbed her in the chest.
 {¶ 6} The victim asked appellant to take her to the hospital, but he refused. At that point, appellant's brother-in-law, William Jerome Carter ("Carter") arrived. Appellant gave Carter the blade, and Carter placed it on a table in the kitchen. Carter then left the trailer to purchase beer. When he returned, the victim approached him in his car and asked him to take her to the hospital. Carter complied with her request and drove her to Lake East Hospital. From Lake East Hospital, the victim was lifeflighted to Metro Hospital in Cleveland.
 {¶ 7} Carter testified that he witnessed the altercation between appellant and the victim. He indicated that he saw the victim trying to stab appellant with the blade. Appellant pushed the victim over the bed, the victim stumbled, fell on the floor, and stabbed herself. After the fight, Carter left the trailer to purchase beer. When he returned, appellant had departed, and the victim asked Carter to take her to the hospital.
 {¶ 8} A jury trial was held on May 29 and 30, 2001. On May 31, 2001, the jury returned a verdict of guilty on both counts of the indictment. Appellant had been convicted of murder in 1974; therefore, the trial court held a repeat violent offender hearing on June 1, 2001. At that hearing, the trial court stated that because the two counts of the indictment were based on the same set of facts, count two would merge with count one. The trial court also explained to appellant that the repeat violent offender specification permitted the trial court to impose an additional sentence of up to ten years.
 {¶ 9} A sentencing hearing was held on July 11, 2001. The trial court sentenced appellant to a term of ten years on count one, with an additional seven years for the repeat violent offender enhancement. Appellant has filed a timely notice of appeal of the trial court's July 13, 2001 judgment entry and makes the following assignments of error:
 {¶ 10} "[1.] The causation jury instructions given by the trial court undercut the mens rea requirement for the charges and thus violated [appellant's] rights to due process and fair trial as guaranteed by theFifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 11} "[2.] The trial court erred to the prejudice of [appellant] when it failed to grant a motion for mistrial based upon the misconduct of one of the state's witnesses in violation of [appellant's] rights to fair trial and due process as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.
 {¶ 12} "[3.] The trial court erred to the prejudice of [appellant] when it failed to allow defense counsel to use prior theft convictions to impeach a witness, in violation of [appellant's] due process rights and rights to fair trial as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.
 {¶ 13} "[4.] The trial court erred to the prejudice of [appellant] by failing to grant a motion for mistrial when a state's witness violated a court order by testifying about [appellant's] prior bad acts, in violation of [appellant's] due process rights and rights to fair trial as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution
and Sections 5 and 10, Article I of the Ohio Constitution.
 {¶ 14} "[5.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 15} "[6.] The trial court erred to the prejudice of [appellant] when it ordered an additional prison term on the repeat violent offender specification in violation of R.C. 2929.14(D)(2)(b)(i) and (ii) and [appellant's] right to be free from double jeopardy as guaranteed by theFifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 16} In his first assignment of error, appellant contends that the trial court erred in giving the jury instruction on "Cause; natural consequences" contained in 4 OJI 409.55. Specifically, appellant argues that the giving of this instruction impermissibly changed the mens rea requirement of purposely for attempted murder and knowingly for felonious assault to a civil negligence standard.
 {¶ 17} Appellant's assignment of error is without merit for three reasons, the first reason being that the trial court gave the instruction on cause and natural consequences in connection with count two, the felonious assault charge, and not count one, the attempted murder charge.
 {¶ 18} Second, even if there were ambiguity as to whether the instruction was given in connection with count one or count two, appellant has offered no law in support of his contention that the instruction was improper. The instruction on causation given by the trial court in this case contained none of the language that other courts have found objectionable.
 {¶ 19} The trial court issued the following instructions to the jury:
 {¶ 20} "In Count One, [appellant] is charged with an attempt to commit the offense of murder. Before you can find [appellant] guilty, you must find beyond a reasonable doubt that *** [appellant] *** did purposely engage in conduct which, if successful, would constitute or result in the commission of the offense of murder ***.
 {¶ 21} "The principal offense in Count One is murder. Murder is defined as purposely causing the death of another. Purpose to cause the death of another is an essential element of the crime of murder.
 {¶ 22} "A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of [appellant] a specific intention to cause the death of [the victim].
 {¶ 23} "Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 {¶ 24} "The purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used and all other facts and circumstances in evidence.
 {¶ 25} "If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon.
 {¶ 26} "Proof of motive is not required. The presence or absence of motive is one of the circumstances bearing upon purpose. Where an act is a crime, a good motive or purpose is not a defense.
 {¶ 27} "*** "Purpose to engage in conduct that, if successful, would constitute or result in the offense of murder is an essential element of the crime of attempted murder.
 {¶ 28} "Purpose has been defined above.
 {¶ 29} "In Count Two, [appellant] is charged with felonious assault. Before you can find [appellant] guilty, you must find beyond a reasonable doubt that *** [appellant] *** did knowingly cause or attempt to cause physical harm to [the victim] by means of a deadly weapon or dangerous ordnance ***.
 {¶ 30} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 31} "***
 {¶ 32} "The State charges that the act or failure to act of [appellant] caused physical harm to [the victim]. Cause is an essential element of the offense. Cause is an act or failure to act which, in a natural and continuous sequence, directly produces the physical harm to [the victim], and without which it would not have occurred.
 {¶ 33} "[Appellant's] responsibility is not limited to the immediate or most obvious result of [his] act or failure to act. [Appellant] is also responsible for the natural and foreseeable consequences that follow, in the ordinary course of events, from the act or failure to act."
 {¶ 34} In Sandstrom v. Montana (1979), 442 U.S. 510, 513, the trial court instructed the jury that "'(the) law presumes that a personintends the ordinary consequences of his voluntary acts.'" (Emphasis added.) The Supreme Court held that a reasonable jury could have interpreted this instruction in either of two ways: (1) the jury could have interpreted the presumption as "conclusive," that is, not a presumption at all, but as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption; or (2) the jury could have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions, unless the defendant proved the contrary by some quantum of proof. Id. at 517. The Supreme Court held that because a reasonable juror could have given the presumption conclusive or persuasion-shifting effect, the instruction represented constitutional error. Id. at 521.
 {¶ 35} In the instant case, the instruction given was as follows: "The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences that follow, in the ordinary course of events, from the act or failure to act." The instruction given by the trial court in this case can be distinguished from the instruction in Sandstrom because it contains neither a presumption nor a reference to appellant's intent.
 {¶ 36} In State v. Jacks (1989), 63 Ohio App.3d 200, 204-205, the trial court gave the following instructions on cause in a murder case:
 {¶ 37} "The causal responsibility of the defendant for an unlawful act is not limited to its immediate or most obvious result. He is responsible for the natural, logical and foreseeable result that follows in the ordinary course of events from an unlawful event.
 {¶ 38} "The test for foreseeability is not whether the defendant should have foreseen the injury in its precise form or to a specific person. The test is whether a reasonably prudent person, in like and similar circumstances would have anticipated that death [would] likely result to anyone from the performance of the unlawful act." (Emphasis added.)
 {¶ 39} The Eighth Appellate District found that those instructions undercut the mens rea requirement for murder, and that the jury could have found him guilty on the basis of negligence instead of purposeful behavior. Id. at 205. The instructions in the instant case were not identical to those in Jacks. Here, the trial court omitted the language regarding the "reasonably prudent person" standard. Therefore, this case is readily distinguishable from Jacks.
 {¶ 40} In short, the instruction on causation in this case can be distinguished from those found to be constitutionally infirm because it did not contain references to presumptions, intent, or a reasonably prudent person. Therefore, we cannot conclude that the trial court erred in giving this instruction. In this same vein, we would note that OJI503.02, which contains the instruction on murder, specifically references the instruction on causation contained at OJI 409.55 that was used by the trial court in this case.
 {¶ 41} Finally, even if the instruction on causation was understood by the jury to relate to count one and was constitutionally infirm, in considering the totality of the instructions and the closing argument of the prosecution, we could not conclude that the instruction on causation constituted prejudicial error. As the Supreme Court of Ohio has previously observed, a single jury instruction must not be considered in isolation but must be viewed in the context of the instructions as a whole. State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus. "Thus, a judgment will not be reversed if a portion of the general charge is improper and misleading unless the entire charge resulted in prejudicial error." State v. Baker (1993), 92 Ohio App.3d 516,536.
 {¶ 42} In State v. Burchfield (1993), 66 Ohio St.3d 261, 261-262, the Supreme Court of Ohio upheld the appellant's conviction for murder with a firearm specification although the trial court had given the following instruction:
 {¶ 43} "`The test for foreseeability is not whether the defendant should have foreseen the injury in its precise form or as to a specific person. The test is whether a reasonably prudent person in the light of all the circumstances would have anticipated that death or injury or physical harm was likely to result to anyone from the performance of the unlawful act or failure to act.'" (Emphasis added.)
 {¶ 44} In upholding the conviction, the Supreme Court noted that extensive instructions regarding purpose were given prior to the causation instruction; immediately following the causation instruction, the trial court reiterated the purpose requirement for murder; an instruction was also given on the lesser included offense of voluntary manslaughter; and, the prosecutor did not reference the causation instruction in his closing argument. Id. at 262. The Supreme Court observed that "[t]he usefulness in murder cases of the foreseeability instruction is questionable, especially given its potential to mislead jurors[,]" it did not, however, state that such an instruction invariably constituted reversible error. Id. at 263.
 {¶ 45} In the case at hand, the trial court gave extensive instructions on the meaning of "purpose" and "purposely;" the prosecutor did not refer to "causation" or "natural consequences" in his closing argument; and the trial court gave its causation instruction in connection with count two, the felonious assault charge, as opposed to count one, the attempted murder charge. In view of these facts, and after considering the totality of the trial court's jury instructions, in the instant matter, even if the trial court had given an improper and misleading instruction with respect to cause and natural consequences, such an instruction would not have created prejudicial error with respect to the jury instructions as whole.
 {¶ 46} In sum, appellant has not cited any precedent that would clearly prohibit the trial court from using the instruction on cause and natural consequences found at OJI 409.55. A careful examination of that language suggests that it does not undercut the mens rea requirement for murder, or in any way shift the burden of persuasion to appellant. OJI 409.55 does not reference intent, presumption, or a reasonably prudent person, and, consequently, contains none of the objectionable language that other courts have found problematic. Further, if the instruction was objectionable, it was given in connection with the felonious assault charge and not the murder charge. Finally, even if we had determined that the instruction had been given in connection with count one and was unconstitutional, given the totality of the jury instructions, the trial court's use of the contested instruction could not have constituted prejudicial error. For the foregoing reasons, appellant's first assignment of error is not well-taken.
 {¶ 47} In his second assignment of error, appellant argues that the trial court should have declared a mistrial on the basis of the fact that Patrolman Gerald Retkofsky ("Retkofsky"), who had investigated the crime and testified for the prosecution, had lunch with three of the jurors in this case.[1] Retkofsky admitted that he spoke to three jurors while in line at Burger King. He then approached their table and asked if he could join them for lunch and they agreed. Upon questioning by the trial court in the presence of both the prosecuting attorney and appellant's attorney, Retkofsky stated that he did not discuss the case with the jurors. The trial court then individually questioned the three jurors who lunched with Retkovsky. All three stated that they had not discussed the case during lunch and that their conversation with Retkofsky would not influence their determination of appellant's guilt or innocence.
 {¶ 48} In the event a trial court learns of a communication between a third party and a juror, the trial court must conduct a hearing to determine whether the communication biased the juror. State v.Phillips (1995), 74 Ohio St.3d 72, 88. There is "great concern" when a juror has had a conversation with a witness, and the "juror misconduct" creates a rebuttable presumption of prejudice; "however, the rebuttable presumption can arise only when the conversation with the juror involves substantive matters." State v. Daniel (1994), 97 Ohio App.3d 548, 570. A new trial may be granted on the application of the appellant for misconduct of a witness, but where there is nothing in the record to demonstrate that the conversation between the witness and the juror might have influenced the verdict, the trial court's refusal to grant a new trial will not be disturbed. State v. Cheirs (Dec. 4, 1996), 7th Dist. No. 95 C.A. 139, 1996 WL 709397, at 7. The trial court has broad discretion in determining whether to declare a mistrial on the basis of the illicit communication. Phillips, supra, at 88.
 {¶ 49} This court addressed a fact pattern similar to the one found in this case in State v. Brown (Nov. 29, 1996), 11th Dist. No. 95-A-0071, 1996 WL 757527. In Brown, the witness who spoke to the jurors was also a police officer. We observed in Brown that "the focus of our analysis is not upon the motive of the witness in speaking to the jurors. Instead, our focus is upon whether the jurors were still capable of rendering a fair decision." Id. at 5.
 {¶ 50} Here, all three of the jurors questioned indicated that they had not discussed the case with Retkofsky and that their lunchtime conversation would not in any way influence their view of the case. Because the trial court could conclude from its examination of Retkofsky and the jurors that the jurors were still capable of rendering a fair decision, we find no error on the part of the trial court in refusing to declare a mistrial. However, we would note parenthetically that we consider Retkofsky's conduct to be egregious. Conversations between jurors and a police officer who testified at trial can only undermine the defendant's and the broader community's confidence in the fairness of the proceedings. This court will not passively ignore conduct that impairs the public's belief in the impartiality of a jury and we invite the prosecutor to undertake additional appropriate measures to ensure that such conduct is not repeated by his witnesses in the future. The state is an appropriately formidable trial opponent for any criminal defendant, and it need not have its witnesses ingratiate themselves with members of the jury. Appellant's second assignment of error lacks merit.
 {¶ 51} In his third assignment of error, appellant avers that the trial court erred in denying his motion to use prior convictions to impeach the victim. On May 16, 2001, appellant filed a "Motion of Intent to Use Conviction to Impeach Witness." In his motion, appellant alleged that between 1974 and 1977, the victim had been convicted of petty theft, possession of stolen property, receiving stolen property, robbery, and grand theft and that these convictions were pertinent to the victim's honesty and credibility as a witness.
 {¶ 52} Pursuant to Evid. R. 609(A)(3), evidence that a witness has been convicted of a crime is admissible if the crime involved dishonesty or false statement. However, Evid. R. 609(B) places a ten-year time limit on the use of such convictions generally:
 {¶ 53} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."
 {¶ 54} The admission or exclusion of a prior conviction for impeachment purposes is within the trial court's discretion. State v.Smith (Aug. 20, 1999), 5th Dist. No. 98-CA-6, 1999 WL 668801, at 4, citing State v. Wright (1990), 48 Ohio St.3d 5. An appellate court applies an abuse of discretion standard in reviewing the trial court's decision to admit or exclude such evidence. Smith, supra, citing Statev. Lane (1997), 118 Ohio App.3d 230.
 {¶ 55} In State v. Fluellen (1993), 88 Ohio App.3d 18, 22, the Fourth Appellate District observed that by including the phrase "supported by specific facts and circumstances" in Evid. R. 609(B), the drafters of the rule must have "intended that even though ten-year-old convictions are ordinarily not probative, the facts and circumstances may make a ten-year-old conviction relevant."
 {¶ 56} In the instant case, the victim testified that appellant attacked her with an eighteen-inch blade. Does the victim's conviction for robbery in 1977 support the conclusion that she would be less credible in testifying against appellant in the current matter? In our view, the fact that the victim had been convicted of theft and robbery more than twenty years prior to this attack would appear to have little bearing on her credibility as a witness in view of the testimonial circumstances of this case. Also, during the course of her direct examination, the prosecution questioned the victim about an October 1997 conviction of the victim for drug abuse. Further, the victim testified that she had been "drinking and drugging" the evening before the altercation with appellant, and that she had alcohol and crack cocaine in her system when she arrived at appellant's residence. Certainly, even in the absence of knowledge of the victim's convictions from the 1970s, the jury was not under any misapprehension that the victim was of impeccable character. For the foregoing reasons, we conclude that the trial court did not abuse its discretion in ruling that the victim's convictions dating from the 1970s were inadmissible. Appellant's third assignment of error lacks merit.
 {¶ 57} Appellant contends, in his fourth assignment of error, that the trial court erred in failing to grant a mistrial when the victim testified about appellant's prior violent acts, despite a court order prohibiting such testimony.
 {¶ 58} On May 29, 2001, appellant filed a motion in limine requesting an order "prohibiting the prosecutor or any of [his] witnesses from mentioning [appellant's] prior crimes or prior sentences; or prior acts of violence toward others ***." The trial court orally prohibited the prosecutor from mentioning appellant's prior acts of violence towards his wife and girlfriends, with the exception of his prior acts of violence toward the victim.
 {¶ 59} During the direct examination of the victim, the prosecutor asked her if she knew the marital status of appellant and his wife. The victim replied: "They had been separated. Well, she told me due to his violence." Appellant's counsel objected and requested a mistrial. The trial court declined to grant a mistrial at that time and instructed the jury to disregard the victim's comment.
 {¶ 60} Crim. R. 33(A)(2) provides that a new trial may be granted on motion of the defendant for "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state[.]" The trial court should declare a mistrial only when a fair trial is no longer possible. Statev. Bolognue (Sept. 10, 1997), 9th Dist. No. 18171, 1997 WL 576381, at 4. The decision whether to grant a mistrial is strictly within the trial court's sound discretion, and the court's decision will not be disturbed on appeal absent a showing of material prejudice. State v. Terrell (Oct. 23, 2000), 12th Dist. No. CA99-07-020, 2000 WL 1591147, at 4.
 {¶ 61} In the instant matter, the victim testified that immediately before the day of the altercation with appellant, she had been residing at Forbes House, a domestic violence shelter. She also stated that on the day of the stabbing, appellant slapped her on the face twice, punched her in the eye, and that appellant "beat [her] from the living room to the bedroom." According to the victim, appellant beat her off and on from noon until approximately 5:00 p.m., and that he repeatedly told her that he was going to kill her. State's Exhibit 8, which was admitted into evidence, is a photograph of the victim with severe bruising in the area of her left eye, and State's Exhibit 7 shows blood splattered across the floor of appellant's bathroom. There was also testimony offered at trial as to the extent and seriousness of the wound that the victim suffered as a result of her altercation with appellant. Thus, there was substantial evidence before the jury as to appellant's violent character. In view of the significant amount of testimony that the victim provided as to acts of violence appellant committed against her, we conclude that the victim's single reference to appellant's violent behavior with his ex-wife did not constitute material prejudice.
 {¶ 62} Finally, the trial court instructed the jury to disregard the victim's remark. Curative instructions are considered an effective means of remedying irregularities that occur during trial, and a jury is presumed to follow any such instructions given by the trial court. Id.
Therefore, appellant's fourth assignment of error is not well-taken.
 {¶ 63} In his fifth assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. To determine whether the verdict was against the manifest weight of the evidence, we must review the record, weigh the evidence and reasonable inferences therefrom, consider the credibility of the witnesses, and then decide if the jury clearly lost its way in resolving the conflicts in the evidence. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082,1994 WL 738452, at 5.
 {¶ 64} In the case sub judice, the fact that the victim suffered a serious injury that could have caused her death is undisputed. The only contested issue is whether appellant stabbed the victim, or the victim accidentally stabbed herself.
 {¶ 65} Carter testified to the following series of events:
 {¶ 66} "Well, [the victim] was just trying to stab him, fighting, fighting. The next thing I know, [appellant] pushed her over the bed and she stumbled and fell off of the bed and hit the floor. ***
 {¶ 67} "Then I heard [the victim] say, `Ow, ow.' ***"
 {¶ 68} Appellant testified that she was lying on her back on appellant's bed at the time that he stabbed her."
 {¶ 69} With respect to Carter's testimony, we would note that the weapon that inflicted the wound was a blade approximately eighteen inches in length. While it certainly is not impossible that the victim fell while attacking appellant and accidentally stabbed herself with the blade, it was not unreasonable for the jury to conclude that the victim's version of events was more probable. Also, Carter left the victim at the hospital without speaking to any hospital personnel, in spite of a specific request from a hospital staff member that he not leave. Further, he failed to report the incident to the police. These actions on his part could have undermined his credibility with the members of the jury. Given the facts and circumstances surrounding this case, we cannot conclude that the jury clearly lost its way in finding appellant guilty. Therefore, appellant's fifth assignment of error is overruled.
 {¶ 70} In his sixth and final assignment of error, appellant raises two issues: first, the trial court did not make the necessary findings to impose an additional prison term for a repeat violent offender specification; and, second, the imposition of the additional prison term was a violation of the Fifth Amendment's double jeopardy clause.
 {¶ 71} Pursuant to R.C. 2929.14(D)(2)(b) "[i]f the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense *** the court may impose on the offender an additional definite prison term *** if the court finds that both of the following apply ***:
 {¶ 72} "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 {¶ 73} "(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12
of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."
 {¶ 74} The trial court, in this case, considered the factors listed under R.C. 2929.12(D) indicating that the offender is likely to commit future crimes and found that: (1) appellant had a history of criminal convictions — R.C. 2929.12(D)(2); (2) appellant had not responded favorably to previously imposed sanctions — R.C. 2929.12(D)(3); (3) appellant's conduct was related to drug and alcohol abuse — R.C. 2929.12(D)(4); and (4) appellant had shown no genuine remorse — R.C. 2929.12(D)(5). The trial court found that there were no factors under R.C. 2929.12(E) indicating that recidivism was less likely. The trial court also made a finding that the sentence of ten years was inadequate to punish the offender and protect the public from future crime. These findings were sufficient to comply with the requirements of R.C. 2929.14(D)(2)(b)(i).
 {¶ 75} The trial court also considered the factors identified under R.C. 2929.12(B) suggesting that appellant's conduct was more serious than conduct normally constituting the offense and found that: (1) the victim suffered very serious physical harm as well as psychological harm — R.C. 2929.12(B)(2); and (2) appellant's relationship with the victim facilitated the offense. The trial court found no factors under R.C. 2929.12(C) that made the offense less serious. Finally, the trial court made the requisite finding that the term imposed was demeaning to the seriousness of the offense because the factors indicating that appellant's conduct was more serious than conduct normally constituting the offense outweighed the factors that would have indicated that his conduct was less serious. Because the trial court made all of the findings mandated by R.C. 2929.14(D)(2)(b)(i) and (ii) we conclude there is no merit to the first issue raised by appellant.
 {¶ 76} The second issue raised by appellant in his sixth assignment of error is whether the imposition of an additional seven-year prison term under the repeat violent offender specification violates appellant's right to be free from double jeopardy. In State v. Brogdon
(Jan. 27, 1995), 11th Dist. No. 92-T-4746, 1995 WL 434083, this court addressed the analogous issue of whether sentencing the appellant on both a firearm specification and the charge of having a firearm while under a disability violated the Fifth Amendment prohibition against double jeopardy. In Brogdon, supra, at 5, we noted that "the United States Supreme Court has consistently held that the Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant against multiple punishments for the same act or offense. *** However, *** this general rule is not applicable to cumulative sentences which have been mandated by the legislature[.] *** Missouri v. Hunter (1983), 459 U.S. 359, 366." Similarly, in State v. Vasquez (1984), 18 Ohio App.3d 92, 94, the Sixth Appellate District cited Hunter for the proposition that the Double Jeopardy Clause does not preclude the imposition in a single trial of cumulative punishment for aggravated robbery and a firearm specification. We would observe that in R.C. 2929.14(D) which addresses repeat violent offenders, the state legislature of Ohio has clearly articulated that repeat violent offenders are subject to cumulative sentences such as the sentence appellant received in this case.
 {¶ 77} Finally, in State v. Sargent (1998), 126 Ohio App.3d 557,566, the Twelfth Appellate District held that "[a] statute which permits a court to enhance the penalty for a subsequent crime based upon the offender's prior criminal conviction is not a separate, additional sentence imposed for the earlier offense and does not violate the Double Jeopardy Clause, since the offender is not subjected to duplicate punishment for the earlier offense." Because the additional seven-year prison term that resulted from appellant's repeat violent offender specification was not an additional punishment for his murder conviction, but an enhancement of the penalty for his most recent crime, it is not a violation of his Fifth Amendment rights, and his sixth assignment of error is without merit.
 {¶ 78} For the foregoing reasons, the July 13, 2001 judgment entry of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] Retkofsky's testimony was not of a controversial nature. He referenced his interview of the victim at the hospital and the gathering of evidence from the crime scene.